# THE MONUMENTAL BREWING CO. *vs.* GIRMAN LARRIMORE.

*Negligence—Wagon Standing Near Car Track—Person on Footboard of Street Car Struck by Swinging Open of Gate of Wagon—Instructions—Reference in Prayer to the Pleadings.*

It is the duty of a person in charge of a wagon standing near a street-car track so to place and manage it, as far as practicable, as not to expose the persons on a passing car to the danger of collision.

Plaintiff, a conductor of a street railway company, was standing on the footboard of an open car, going at half speed, when it approached a large beer wagon which was standing alongside of the track, the outside of the hub being from two and a half to three feet from the track. The plaintiff's evidence was that as the car was passing the wagon its end gate or door was swung open and struck the plaintiff before he could get out of the way. In an action against the owner of the wagon, the defendant's evidence was that the gate was open before the car approached, and that neither its position nor that of the wagon was afterwards changed. *Held,* that since it was the duty of the defendant so to place its wagon and so to fasten the gate or end piece that persons on a passing car would not be injured by the swinging open of the gate, and since if the driver did not himself open the gate he permitted it to be opened, the evidence of the defendant's negligence is legally sufficient to go to the jury.

*Held,* further, that a prayer offered by the defendant is erroneous which denies the right of the plaintiff to recover if the defendant's servants believed, in the exercise of reasonable care, that the wagon was stopped at a safe distance from the track, so that the gate would not come in contact with anyone on the footboard, and the conductor and motorman thought the same thing. The question is not whether the de-

fendant's servants believed that they had acted with due care, but whether in fact they had done so.

*Held,* further that another prayer offered by the defendant is erroneous which denies the right to recover if the wagon was standing with its gate open at a safe distance from the track and the injury to the plaintiff occurred by the suction of the passing car drawing the gate towards it. There is no evidence in the case as to the conjectured suction; and the prayer is also bad in assuming that the wagon was at a safe distance from the track if the suction of a passing car could draw further open the gate.

A prayer will not be held to refer to the pleadings when it merely asserts that under the proceedings in the case the evidence is legally insufficient.

*Decided January 13th, 1909.*

Appeal from the Superior Court of Baltimore City (EL-LIOTT, J.), where there was a judgment on verdict for the plaintiff for $500.

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, WORTHINGTON and HENRY, JJ.

*S. S. Field,* for the appellant.

*William R. Barnes* (with whom was *Horton S. Smith* on the brief), for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

The appeal in this case was taken by the appellant company from a judgment against it in the Superior Court of Baltimore City for damages for injuries suffered by the appellee under somewhat unusual circumstances. The leading facts relating to the accident in which the appellee was injured appear from the record to have been as follows:

On May 28th, 1907, while the appellee was standing on the footboard on the east side of a moving summer car of the United Railways, in discharge of his duties as conductor of the car, he was struck by the open end gate of one of the appellant company's delivery wagons standing on the east side of the track, and knocked from his car and injured. The car was then going north on the north-bound track on Curtis Avenue, near Cypher Street, and the wagon, with the mules that drew it headed southerly, was standing between the sidewalk and the track with the outside of its hub at a distance of two and a half to three feet from the latter. The precise width of the wagon does not appear, but it was estimated by the witnesses at from two and a half to three and a half feet. The end gate was of nearly the same width, as it fitted into and closed the end of the wagon. The gate was hinged at the side of the wagon and swung open horizontally toward the railway track as the wagon then stood. Two men accompanied the wagon—Jacob Kimmerle, the driver, who was admitted to be in the employ of the appellant company, and his assistant, William E. Creamer, whose relation to the company is a matter of controversy.

The testimony on behalf of the appellee, as plaintiff below, tended to show that as the car approached the wagon it was going at half speed, and that both the motorman and conductor saw the wagon, and that its end gate was not then open, and that, as there was ample room for the car to pass the wagon in that condition, they went ahead; but just as they reached the wagon its end gate swung round toward the car and struck the conductor before he could get out of its way. The motorman testified: "He saw the driver of the wagon opening the gate, but didn't see it 'falling open.' When he was within about a foot of the wagon he saw the driver attempting to open it; he was opening it out towards the car. He passed on by and didn't stop because there was no danger when he was passing. The front of the car was past the wagon when the driver opened the gate. He was about a foot from the rear of the wagon when he saw the gate." On cross-examina-

tion he admitted that he could not identify the man who opened the gate as the driver, but presumed it was he. The conductor said: "Just after the front of the car passed the driver or someone on the back of the wagon threw the back gate of the wagon open, and it knocked me in the street."

Martin G. Moses testified to having witnessed the accident and that the wagon "was the Monumental Brewing Company's wagon," and said that "two men generally go on them bottled-beer wagons."

On behalf of the appellant company as defendant below, Jacob Kimmerle, in response to the inquiry of its counsel whether he was one of the parties in charge of the wagon, replied: "Yes, sir; I was the driver;" and when asked if anybody else was with him at the time, said that Mr. Creamer was with him, and, in response to the further inqury whether they were both with that one wagon, replied: "Yes, sir." He further testified that Creamer opened the end gate of the wagon before the car was in sight at all, and that the gate was all of the way back to the side of the wagon, and extended only about six inches from the side of the wagon. He further testified that the gate is really two gates, one opening to the left and the other to the right; "it extended the full width of the wagon; it just goes simply on the inside of the wagon." The wagon was a large one and was about nine or ten inches inside of the hub. He was at the side of the wagon when the accident occurred, between the car and the wagon, right at the rear of the mules, and saw the gate hit the conductor, who was near the rear of the car at the time.

Creamer testified for the company that he wasn't employed by it, but that he was on its wagon working for Mr. Kimmerle. He further testified that on the occasion of the accident the car was about a square away from the wagon when he opened the end gate of the latter, and that he did not move the gate after it was opened nor did the wagon change its position. He also said that the gate was only about six inches away from the wagon when the car approached. He saw the conductor when he was struck looking forward and

having hold of the handle of the car with his left hand. This witness thought that the hub went outside of the body of the wagon about five inches and that the tread of the wagon was about as wide as the car tracks on Curtis Avenue, but it would not track with the rails because they were steam road rails.

There is but one bill of exceptions in the record, and that brings up the action of the Court below on the prayers. The plaintiff offered three prayers, all of which were granted. The defendant offered eight prayers, of which the Court granted the third, fourth, seventh and eighth, and rejected the others.

The form of the plaintiff's prayers, which are appropriate to the appellee's theory of the case, is not made the subject of criticism on the brief of the appellant, which contends, first, that the case should have been taken from the jury for want of legally sufficient evidence to justify a recovery, by the granting of its first and second prayers; or, secondly, that its theory of the case should have been presented to the jury by granting its fifth and sixth prayers.

We are clearly of opinion that the defendant's first and second prayers, which sought to have the case withdrawn from the jury, were properly rejected. Without recapitulating all of the evidence, it was proved beyond controversy that the appellee, while in the discharge of his duty in a place where he had a right to be, was struck and injured by the open and unfastened end gate of the appellant company's wagon, which was swung open in such a situation and under such circumstances that a jury would be justified in finding the person guilty of negligence who was responsible for opening it or permitting it to hang open and unfastened as the car approached and passed.

The party in control of the wagon was charged with knowledge that cars were liable to pass and repass on the electric railway tracks, and it was his duty in allowing the wagon to stand in the public highway near the car tracks to so place and manage it, as far as he reasonably could, as not to expose the occupants or persons in charge of passing cars to danger

of collision with any portion of it.   There is no testimony that there was not space sufficient between the car tracks and sidewalk to have placed the wagon so far from the tracks that its swinging gate would not be liable to get in the way of passing cars, nor that the gate could not easily have been fastened back to the side of the wagon instead of being allowed to hang free.

If the plaintiff's witnesses are to be believed, the gate of the wagon was swung round immediately upon the passing car, although both Kimmerle, the driver, and Creamer say that they saw the car approaching a square off.   If, on the other hand, the defendant's witnesses are to be believed, that the gate was opened before the car came in sight, as Kimmerle says, or when it was a square off, as Creamer says, it was permitted to hang open and unfastened until the car with the conductor on the footboard reached it.   In either event, there was evidence from which the jury might have found the defendant company guilty of negligence.   *Geiselman* v. *Schmidt,* 106 Md. 585; *B. & O.* v. *Stebbing,* 62 Md. 515. As the first and second prayers make no reference to the pleadings, the question presented by them was, as has been frequently decided by this Court, whether the facts that might properly be found by the jury from the evidence constituted a good cause of action.   *Balto. Bldg. Association* v. *Muhlbach,* 69 Md. 406; *Walsh* v. *Taylor,* 39 Md. 592; *Home Friendly Socy.* v. *Roberson,* 100 Md. 88.   The reference to the proceedings in the first prayer cannot be regarded as having been made to the pleadings, as the two words have neither technically nor ordinarily the same meaning.

The pleadings in a case consist of the statements of the litigants in legal form of the facts constituting the cause of action and grounds of defense by which the issue is made up. The proceedings in an action at law, on the other hand, consist rather of the successive acts done and steps taken as parts of the suit during its progress, whether by Court, counsel, clerk or jury.   *Words and Phrases,* Vol. 6, p. 5410, 5632-3; *Wilson* v. *Allen,* 3 How. Prac. 369-71; *Uhe* v. *Chicago M. &*

*St. P. Ry. Co.,* 54 N. W. 601; *At., Top. & St. Fe R. R. Co.* v. *Brassfield,* 51 Kans. 167; *Amis* v. *Smith,* 40 U. S. 313; *United States* v. *Knight,* 39 U. S. 307. In *Strom* v. *Montana Cent. Ry. Co.,* 81 Minn. 347, 84 N. W. 46, it was said that the term proceedings in its most comprehensive sense "includes every step taken in a civil action except the pleadings." Without adopting all of the views expressed in the cases to which we have referred, we think that the words "pleadings" and "proceedings" are not sufficiently alike in import to be interchangeably employed in instructions to juries.

When it is desired in framing prayers to make special reference to the pledaings in the case it should be done by referring to them as such.

The defendant's fifth prayer asked the Court to instruct the jury that if they "find that the defendant's servants in charge of its wagon had stopped the wagon and opened the gate, and that in stopping the wagon where they did they exercised reasonable or ordinary care to stop it at a sufficient distance from the track, so that the gate would not come in contact with anyone on the car or footboard, and that in the exercise of such reasonable care they believed that the wagon and gate were a safe distance from the track, and shall further find that the motorman of the car also thought the gate was a safe distance from the car, so that he could safely go by it, then the jury are instructed that there was no negligence on the part of the defendant's servant in charge of its wagon, and the verdict of the jury should be for the defendant."

The sixth prayer was as follows: "If the jury find that the defendant's wagon was standing with its gate open at a safe distance from the car tracks, and that the injury to the plaintiff occurred by the suction from the passing car suddenly drawing the gate towards the car, then the verdict of the jury should be for the defendant."

These prayers were also properly refused. The fifth prayer was based upon the hypothesis that if the jury found that the defendant's servants in charge of the wagon believed in the

exercise of reasonable care that it was stopped by them at a safe distance from the track, so that the gate would not come in contact with anyone on a passing car or its footboard, and the conductor and motorman on the car thought the same thing, then the defendant was not guilty of negligence and there could be no recovery against it. Now, the evidence of both the conductor and motorman was that they approached the wagon toward its front, and did not see its end gate at all until they were even with the wagon, and that it was under those circumstances that they thought the car could safely pass it. Their conclusion thus arrived at of their ability to pass the wagon in safety could throw no light upon the question of the negligence *vel non* of the management of the end gate by the parties in charge of the wagon. The evidence did not tend to show that they thought they could pass the wagon in safety with its end gate open and swung round toward the car. The sequel showed that the wagon did not stand at a safe distance from the track. The true question in that connection was whether the defendant's servants in charge of the wagon had in fact exercised reasonable care to place it so that cars might pass it in safety, not whether they believed they had done so.

The sixth prayer was bad because it was based upon a mere conjecture of which there was no evidence that the suction from the passing car drew the end gate toward it and so injured the conductor. It was also bad in assuming that the wagon with its end gate hanging open was at a safe distance from the car tracks, if the end gate when drawn by the suction of a passing car would reach and strike its conductor as he passed along its footboard in discharge of his duty.

We have not thought it necessary to consider the question whether there was legally sufficient evidence to go to the jury to show that Creamer, who was said by some of the witnesses to have opened the end gate of the wagon, was one of the defendant's servants in charge of the wagon. We did not enter upon that discussion because, in our opinion, the testimony tending to show that the driver, who was confessedly in charge

of the wagon, permitted its end gate to hang unfastened, after it was open, in such position that it could swing round and injure a person on the footboard of a passing car was of itself legally sufficient evidence to go to the jury of negligence on his part as the servant of the defendant company the owner of the wagon, within the scope of his employment.

The judgment appealed from must be affirmed..

*Judgment affirmed with costs.*