# DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONAL SERVICES *v.* MICHAEL LeVAN

[No. 5, September Term, 1980.]

*Decided September 15, 1980.*

534

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Arrie W. Davis, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellant.

Submitted on brief by *G. Denmead Leviness* for appellee.

SMITH, J., delivered the opinion of the Court.

We shall here hold that the Court of Special Appeals erred when it concluded that a circuit court's remand to the Sundry Claims Board (the Board) of an appeal from that Board was not an appealable final order. We shall further hold that the circuit court judge erred in determining that awards by the Board were to be governed by the Workmen's Compensation statute.

## I Statutory background

The Board is created by Code (1957, 1978 Repl. Vol.) Art. 41, § 188A (the Act). (The last amendment was in 1976, prior to the incident here in question.) Its purpose is to administer benefits whenever a prisoner at an institution "under the supervision of the Division of Correction (1) is engaged in any extra-hazardous work for which wages or a stipulated sum are paid by said institution, and (2) sustains a permanent partial or permanent total disability as a result of said injury, and (3) this disability incapacitates the prisoner or materially reduces his earning power in such work." [1] The statute specifies that the terms

---

1. The statute states in pertinent part:

(a) *Creation; purpose; definitions; part of Department of Public Safety and Correctional Services.* — A "Sundry Claims Board" is created for the purpose of administering benefits whenever a prisoner in the . . . House of Correction, or any other institution under the supervision of the Division of Correction (1) is engaged in any extra-hazardous work for which wages or a stipulated sum are paid by said institution, and (2) sustains a permanent partial or permanent total disability as a result of said injury, and (3) this disability incapacitates the prisoner or materially reduces his earning power in such work. For the purpose of this subtitle, the terms "extra-hazardous work," "permanent partial disability," and "permanent total disability" have the meanings which currently are given to them in Article 101 of this Code, title "Workmen's Compensation."

(b) *Right to file claim; composition of Board.* — The injured prisoner shall have the right to file a claim for compensation under this subtitle, not later than either twelve (12) months after his release from the institution, or two years from the date of the injury, whichever last occurs, with the Sundry Claims Board. . . .

(c) *Receiving claims; oaths; witnesses; production of records, books, etc.* — The Board may receive original papers representing claims against the State of Maryland under this subtitle, for the payment of which no money has been appropriated. Such claims shall be filed and properly designated either by number or short title, or both. Any member of the Board may administer oaths, compel the attendance of witnesses, and compel the production of records, books and papers pertinent to the claim. The Board may petition any court having jurisdiction for an order to punish as contempt of court any disobedience of such a subpoena or refusal to be sworn or to answer as a witness, or failure to produce records, books and papers.

(d) *Approval or disapproval of claims; claims record.* — After investigation of any such claim the Board shall either approve, approve with conditions and limitations, or disapprove it. The Board shall append to the original papers representing such claim, a concise statement of facts developed by the proceedings upon which its approval or disapproval is based. Such original papers

"extra-hazardous work," "permanent partial disability," and "permanent total disability" have the meanings "which are currently given to them in Art. 101," the Workmen's Compensation statute.

Claims are to be filed "not later than either twelve (12) months after [an injured prisoner's] release from the institution, or two years from the date of injury, whichever last occurs . . . ." The Board is directed after investigation "either [to] approve, approve with conditions and limitations, or disapprove" a claim. It is to "append to the original papers representing such claim, a concise statement of facts developed by the proceedings upon which its approval or disapproval is based." "[T]he good faith of the claimant, the possibility that the alleged injury was self-inflicted or other than accidental, the extent and nature of the injury, the degree of disability, the period of any disability or incapacity for other work, and the ordinary earning power of the claimant" are all to be taken into consideration by the Board in its consideration of claims and in determining what, if any, compensation to allow the claimant. A claimant "may appeal to the circuit court of the

and appended statements shall be filed in the office of the Comptroller . . . . The original papers representing such claim and any other matters pertaining thereto shall constitute a permanent claims record.

(e) *Determination of compensation.* — The Board in considering claims for compensation and in determining what compensation, if any, to allow a claimant, shall take into account the good faith of the claimant, the possibility that the alleged injury was self-inflicted or other than accidental, the extent and nature of the injury, the degree of disability, the period of any disability or incapacity for other work, and the ordinary earning power of the claimant.

(f) *Payment of claims included in State budget.* — The Governor shall include all claims allowed by the Board in the next State budget, for payment to the claimant or his representative.

(g) *Expenses of Board members.* — . . . .

(h) *Appeals.* — Any claimant aggrieved by a final determination of the Board may appeal to the circuit court of the county, or common-law court of Baltimore City, where the injury occurred or the claimant resides. The court may uphold the determination of the Board, remand for further consideration or findings of fact, or reverse or modify any determination which it finds to be arbitrary or unreasonable, and render decision accordingly. The Board may be a party to such appeal, and either party shall have a further right of appeal to the Court of Special Appeals.

county, or common-law court of Baltimore City, where the injury occurred or the claimant resides," which "court may uphold the determination of the Board, remand for further consideration or findings of fact, or reverse or modify any determination which it finds to be arbitrary or unreasonable, and render a decision accordingly." The Board is a permitted party to an appeal. "[E]ither party [in the circuit court] shall have a further right of appeal to the Court of Special Appeals."

The Board came into being as a result of the passage of Chapters 440 and 719 of the Acts of 1961, which are virtually identical measures. We have been able to develop no legislative history by way of background nor have we been referred to any. However, since the two measures were introduced in the respective houses of the General Assembly on the same day by the presiding officer of each house, one may infer that creation of the Board was a proposal of the administration or the legislative leadership. In addition to provision for the Sundry Claims Board, each of the two statutes repealed Code (1957, 1960 Cum. Supp.) Art. 101, § 35A and repealed and reenacted § 35. Prior to the passage of those acts § 35 provided that whenever any prisoner at an institution under the supervision of the Board of Correction was "engaged in any extra-hazardous employment within the meaning of [Art. 101] for which wages or a stipulated sum [were] paid by said institution," that article was to be applicable if the "prisoner sustain[ed] a permanent partial or a permanent total disability as a result of said injury, and [for the purpose of computing benefits] the average weekly wages of any such prisoner injured in the course of his or her employment [were to] be the average weekly wages paid by the Department of Correction to such prisoner, and in addition thereto, a fair and reasonable sum to be determined by the Workmen's Compensation Commission for the board and maintenance of such prisoner not to exceed the amount customarily received by the institution for its own use by prisoners engaged in extra-hazardous employment by other employers." In other words, workmen's compensation was

available for any prisoner injured during the course of any extra-hazardous employment prior to the enactment of the present Sundry Claims Board statute. However, after the revisions, § 35 was applicable only to prisoners "working for the county roads board or the board of county commissioners or county council in the counties to which [the] section [was made applicable]," namely Frederick, Wicomico, and Worcester. Thus, after the revision a prisoner injured on the job was to be compensated only through the Board. The section repealed, 35A, had expanded protection for prisoners by providing that § 35 also would be applicable "to any prisoners working for the county roads board or the board of county commissioners of Wicomico, Frederick or Worcester Counties."

As originally enacted in 1961 a prisoner was required to file his claim for compensation with the Sundry Claims Board "within twelve (12) months after his release from the institution, and not before such release . . . ." This was amended by Chapter 739 of the Acts of 1975 so that the statute now provides, as previously indicated, that the claim is to be submitted not later than twelve months after his release from the institution or two years from the date of injury, whichever last occurs.

## II This case

Appellee, Michael LeVan, sustained an injury on March 29, 1977, while an inmate of the Maryland House of Correction. He was employed at that time as a janitor in charge of sanitation for an activity area. It is conceded that his injuries are covered by the Act. He was examined twice by an orthopedist employed by the Department of Correction. This physician was of the opinion after the first examination that LeVan had sustained a twenty percent permanent partial disability of his lower back. He concluded after the second examination eight months later that a twenty-five percent disability had been sustained.

The Board awarded compensation of $1,500 to LeVan. He was dissatisfied and appealed to the Circuit Court for Anne Arundel County. That court affirmed the determination that

LeVan had sustained an accidental back injury in the course of employment which brought about permanent partial disability, but it remanded the case to the Board "for a further, explicit finding of the percentage of this permanent partial disability, ... also for presentation of further evidence as to [LeVan's] 'ordinary earning power' and for explicit fact-findings on this point," specifying "that such fact finding shall incorporate consideration of [LeVan's] past nonprison wages and the factors listed at page five in the [court's] opinion." At page five of its opinion the court found "that the following factors should be considered in assessing a claimant's earning power: the claimant's age, education, general background and experience, comparison to work performable with the physical impairment, the claimant's willingness to work and availability of claimant's work performable if uninjured." The final direction of the remand was:

> 4) That the Board shall make a new award, if necessary, by multiplying the Claimant's approximate weekly ordinary earning power by the number of weeks which his percentage of permanent partial disability bears to 500 weeks, per Art. 101, sec. 36(4) (a); and that other factors included in Art. 41, sec. 188A (e) shall not be applied to limit or to prorate the basis of the award as they are relevant only to issues of accidental injury and degree of disability.

The Department was dissatisfied and appealed to the Court of Special Appeals. That court in an unreported opinion (No. 481, September Term, 1979) dismissed the appeal ex mero motu "for several reasons," stating:

> 1. The appeal is not from a "final judgment" within the meaning of Courts Art. § 12-301.

> 2. The case has been remanded to the Board for further proceedings after which it will inferentially begin anew its laborious travel through the courts. If and when it next

reaches here, it will be in the form of a final judgment.

3. Md. Rule 1035 a 1 prohibits the Court from entertaining appeals from *pro forma* orders, judgments or decrees.

We think the appeal to be premature inasmuch as all the relevant issues arising in the case have not been decided.

We granted the writ of certiorari and advanced the case for argument prior to the beginning of the September 1980 term.

## III Appealability [2]

Code (1974) § 12-301, Courts and Judicial Proceedings Article states in pertinent part, "Except as provided in § 12-302, a party may appeal from a final judgment entered in a civil or criminal case by a circuit court." The limitation in § 12-302 which would be applicable here is found in subsection (a) stating:

Unless a right to appeal is expressly granted by law, § 12-301 does not permit an appeal from a final judgment of a court entered or made in the exercise of appellate jurisdiction in reviewing the decision of the District Court, an administrative agency, or a local legislative body.

Thus, the right of appeal here stems from Art. 41, § 188A (h), which we have previously quoted, to the effect that an aggrieved party in a circuit court (or "common-law court of Baltimore City") to an appeal from the Sundry Claims Board

---

2. Although the Attorney General regarded this case as of sufficient importance to warrant a petition to us for the writ of certiorari, his brief contains but little argument on the point. No case is mentioned or discussed in support of the proposition that this is an appealable final judgment. In LeVan's brief the point is not even discussed other than to say that since the case is here he "joins with the State in its request that all issues before the Court of Special Appeals be decided . . . ." We suggest that neither party has followed the procedure which should be followed in an appellate court. Moreover, the consent of the litigants cannot vest jurisdiction in an appellate court. Clark v. Elza, 286 Md. 208, 211-12, 406 A.2d 922 (1979), and Biro v. Schombert, 285 Md. 290, 293, 402 A.2d 71 (1979).

"shall have a further right of appeal to the Court of Special Appeals." Exceptions to the requirement that appeals be from final judgments are set forth in § 12-303 and were discussed recently in *Pappas v. Pappas,* 287 Md. 455, 413 A.2d 549 (1980). Since appeals from review by a trial court of a decision by an administrative body are not covered in § 12-303, it follows that, reading §§ 12-301, 12-302, and 12-303 together, only a final judgment is appealable.

The Court of Special Appeals correctly stated that Maryland Rule 1035 a 1 prohibits it from entertaining appeals from pro forma orders, judgments or decrees. There is nothing new about this. Rule 1035 is derived from former Maryland Rule 835 applicable to appeals to this Court at the time when appeals came directly to us. Rule 835 was, in turn, derived from former Rule 25 of this Court stating we would "not entertain or consider any appeal taken from a pro forma order, decree or judgment, but w[ould] treat every such appeal as prematurely taken, and w[ould] dismiss the same whenever it appeared[ed] on the face of the record, or otherwise, that the appeal [was] from such pro forma order, decree or judgment."

We have no pro forma order here. This was a contested case. The parties disagreed and the circuit court judge decided the controversy.

Guidance as to what trial court determinations of administrative appeals are appealable final judgments may be derived from two cases, *United States Fire Ins. v. Schwartz,* 280 Md. 518, 374 A.2d 896 (1977), and *Criminal Inj. Comp. Bd. v. Remson,* 282 Md. 168, 384 A.2d 58 (1978). *Schwartz* was the sequel to *Md. Fire UW v. Insur. Comm'r,* 260 Md. 258, 272 A.2d 24 (1971), in which we upheld orders of the Insurance Commissioner denying requests by three rating bureaus for authority to increase certain homeowners' insurance policy rates. The requested rate schedules in controversy had been instituted prior to the Commissioner's rejection. Pursuant to Code (1957, 1972 Repl. Vol., 1976 Cum. Supp.) Art. 48A, § 242B (2) the companies in question had continued to collect the higher premiums on policies written during the period between the

effective date of the Commissioner's order and the issuance of our mandate. At issue in *Schwartz* was whether those companies who charged the higher rates were required to refund to the holders of the policies so much of the premiums as were found by the Commissioner to be excessive. The Commissioner determined that he had no authority under applicable statutes to order return of any part of the premiums collected during the appeal period. On appeal to the Baltimore City Court a trial judge remanded the case "to the Commissioner for hearing on the extent to which he should invoke his *discretionary* powers under Article 48A, Section 55A." (Emphasis added.) Judge Levine pointed out for this Court that the trial judge in *Schwartz* "neither ordered a refund nor required the Commissioner to do so." He also pointed out that the judge indicated it would be appropriate for the Commissioner to consider the circumstances under which the rates in question were collected during the appeal period, the length of time the refunds had not been forthcoming, whether or not there had been a tender of a refund by the companies, and the difference, if any, in coverage afforded the claimants under the policies issued with the rates in question. Judge Levine said for the Court in *Schwartz:*

> The decisive question, then, is whether the judgment of the Baltimore City Court was final and, therefore, appealable. We think not. Whether a judgment is final is not always readily capable of delineation. In general, the cases hold that to be final, a judgment must actually settle the rights of the parties, *Collins v. Cambridge Hospital,* 158 Md. [112,] 116 [, 148 A. 114 (1930)]; it must finally settle some disputed right or interest of the parties, *Harlan v. Lee,* 177 Md. 437, 439, 9 A.2d 839 (1939). Otherwise stated, the judgment must be so final as to determine and conclude rights involved, or deny the appellant means of further prosecuting or defending his rights and interests in the subject matter of the proceeding, *In re Buckler Trusts,* 144

Md. 424, 427, 125 A. 177 (1924). [*Id.* 280 Md. at 521.]

It was in this context that we said that there was no final judgment in *Schwartz* because "there yet remain[ed] for decision complex issues which ha[d] been remanded for determination by the agency most qualified to resolve them." *Id.* at 523. *Schwartz* is in a class by itself.

In *Remson* parties sought compensation from the Criminal Injuries Compensation Board. That board rejected the claim on the basis that the claimants came within the statutory exclusion of persons related within the third degree of consanguinity or affinity to the person criminally responsible for the crime. The circuit court reversed and remanded the case to that board for an award. Judge Orth said for this Court:

> As the claimants see it, issues remain which have been remanded for determination by the Board. Therefore, the judgment of the circuit court is not final. We do not see it that way. We think that the judgment by the circuit court that the "family" of the assailant proscription did not apply was a "final" judgment in the contemplation of the statutory right to secure a review bestowed by Code (1957, 1971 Repl. Vol., 1977 Cum. Supp.) Art. 41, § 256. Claimants rely solely on *United States Fire Ins. v. Schwartz,* 280 Md. 518, 374 A.2d 896 (1977). In *Schwartz* there remained "for decision complex issues which have been remanded for determination by the agency most qualified to resolve them." *Id.* at 523. Here, all that remained for the Board to do on remand was to determine the amount due the claimants, and that is governed by § 12 of the Criminal Injuries Compensation Act. *Schwartz* is inapposite. We reject the suggestion to dismiss the appeal. [*Id.* 282 Md. at 177.]

Art. 41, § 188A (h) provides that after an appeal to the circuit court "either party shall have a further right of

appeal to the Court of Special Appeals." The order of the circuit court judge provided a formula for determination of the award to be made based upon his construction of the statute. By the terms of the remand the Board was not directed, as in *Schwartz,* merely to exercise its authority but was told to make an award under a specified formula. In *Schwartz* the Insurance Commissioner was of the view that he had no discretion to exercise. Reconsideration of *Schwartz* in the light of our earlier cases such as *D. C. Transit Systems v. S.R.C.,* 259 Md. 675, 682, 270 A.2d 793 (1970), and *Concannon v. State Roads Comm.,* 230 Md. 118, 186 A.2d 220 (1962), and our later decision in *Remson* leads to the conclusion that *Schwartz* was in error. In *Concannon* Chief Judge Brune said for the Court:

> In view of the effect of the order as determining the principal claim of the property owners and as depriving them of the means of proceeding further to enforce the right which they assert, we are further of the opinion that it constitutes a final order within the meaning of § 1 of Art. 5 of the Code (1957) and hence is appealable thereunder. [*Id.* at 125 (citing cases).]

Hence, we overrule *Schwartz* and any cases with a similar holding. We find this to be an appealable final judgment.

### IV The statute

Noting that subsection (a) of the Act provides that certain terms "have the meanings which currently are given to them in Article 101" and that subsection (e) refers to the "degree of disability," the circuit court judge in this case concluded that the Act requires that any award made by the Board be under formulae specified in Art. 101, the Workmen's Compensation statute. We disagree.

In *Police Comm'r v. Dowling,* 281 Md. 412, 379 A.2d 1007 (1977), we said, citing cases for each proposition stated:

> The cardinal rule of statutory construction is to ascertain and carry out the real legislative intent.

> In determining that intent the Court considers the language of an enactment in its natural and ordinary signification. . . . A corollary to this rule is that if there is no ambiguity or obscurity in the language of a statute, there is usually no need to look elsewhere to ascertain the intent of the General Assembly. . . . A court may not insert or omit words to make a statute express an intention not evidenced in its original form. . . . The General Assembly is presumed to have had, and acted with respect to full knowledge and information as to prior and existing law and legislation on the subject of the statute and the policy of the prior law. . . . Absent a clear indication to the contrary, a statute, if reasonably possible, is to be read so that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless, or nugatory . . . . [*Id.* at 418-19.]

To similar effect *see Dorsey v. Beads,* 288 Md. 161, 175-76, 416 A.2d 739 (1980); *Pennsylvania Nat'l Mut. v. Gartelman,* 288 Md. 151, 156, 416 A.2d 734 (1980); and *Messitte v. Colonial Mortgage Serv.,* 287 Md. 289, 293-94, 411 A.2d 1051 (1980).

The prerequisites for obtaining benefits under the Act are set forth in § 188A (a), namely that the claimant be a prisoner at an institution under the supervision of the Division of Correction engaged in extra-hazardous work for which wages or a stipulated sum are paid by the institution, that he sustain a permanent partial or permanent total disability as a result of injury while so engaged, and that the disability incapacitate him or materially reduce his earning power "in such work," obviously referring to work at the institution. It is for the purpose of defining the terms "extra-hazardous work," "permanent partial disability," and "permanent total disability" that Art. 101 is invoked and for no other purpose. The language is clear. Those terms are to "have the meanings which currently are given to them in Article 101 . . . ." It is in subsection (a) that Art. 101 is

mentioned. It appears nowhere else in the statute. There is not even a suggestion elsewhere in the statute that it is to be followed in determining what, if any, award is to be made to a claimant.

Subsection (b) provides limitations, a point not here at issue. No mention is made of Art. 101. Subsection (c) is involved with the administration of the statute such as specifying that members of the Board may administer oaths, etc.

Subsection (d) directs that "[a]fter investigation of any such claim the Board shall either approve, approve with conditions and limitations, or disapprove it." Further reference is made to a requirement that there be appended to the original papers of the claim "a concise statement of facts developed by the proceedings upon which its approval or disapproval is based." No mention is made of Art. 101.

Subsection (e) is the one concerned with determination of compensation. It states in its entirety:

> (e) *Determination of compensation.* — The Board in considering claims for compensation and in determining what compensation, if any, to allow a claimant, shall take into account the good faith of the claimant, the possibility that the alleged injury was self-inflicted or other than accidental, the extent and nature of the injury, the degree of disability, the period of any disability or incapacity for other work, and the ordinary earning power of the claimant.

It contains the criteria to be used by the Board "in considering claims for compensation and in determining what compensation, if any, to allow a claimant . . . ." [3] There are certain positive things the Board is directed to do. It

---

**3.** We have no contention in this case that the statute is unconstitutional because of the absence of sufficient guides and standards to govern the administrative body. *See, e.g.,* Schneider v. Pullen, 198 Md. 64, 81 A.2d 226 (1951), and Maryland Theatrical Corp. v. Brennan, 180 Md. 377, 24 A.2d 911 (1942). Thus, our opinion here is not to be interpreted as approving or disapproving this statute as to constitutionality.

must determine the good faith of the claimant, whether the injury was self-inflicted or other than accidental, the extent and nature of the injury, the degree of disability, the period of disability or incapacity for other work and the ordinary earning power of the claimant. A reviewing court would expect to find each of these determinations clearly appearing in the record. After this determination, the Board is to bring its best judgment to bear and to award compensation accordingly. There is no requirement that the Board follow all the various formulae laid down by the circuit court judge. This compensation is in no way tied to the Workmen's Compensation statute. An attempt to so tie it ignores the fact that a scheme existed for compensation for injured prisoners under that statute and that the General Assembly in its wisdom saw fit to eliminate that scheme and to substitute the Sundry Claims Board in its stead. It has specified the criteria to be followed by the Board.

The Board in this case failed to determine the degree of disability sustained by the claimant, one of the factors which the Act requires to be taken into account in making an award. For that reason, the circuit court judge was correct in remanding the case to the Board "for a further, explicit finding of the percentage of this permanent partial disability . . . ." Since, however, there is no basis whatever in the Act for a conclusion that compensation is to be determined under the formulae of the Workmen's Compensation statute, the circuit court judge erred in that regard.

> *Judgment of the Court of Special Appeals reversed and case remanded to that court for the passage of an order affirming in part and reversing in part the judgment of the Circuit Court for Anne Arundel County with directions for further remand by it to the Sundry Claims Board for further proceedings consistent with this opinion; appellee to pay the costs.*