MORTON E. ROME, Surviving Personal Representative of the Estate of Jean Arthur Lowenthal et al. *v.* PILAR LOWENTHAL et al.

[No. 49, September Term, 1980.]

*Decided April 6, 1981.*

The cause was argued before Murphy, C. J., and Smith, Digges, Eldridge, Cole, Davidson and Rodowsky, JJ.

*Stephen C. Winter,* with whom were *White, Mindel, Clarke & Hill* on the brief, for appellants.

*Leslie D. Gradet,* with whom were *John D. Alexander, Jr.,* and *Allen, Thiebolt & Alexander* on the brief, for appellees.

SMITH, J., delivered the opinion of the Court.

We shall here hold that the term "transcript of the proceedings" appearing in Maryland Code (1974, 1979 Cum. Supp.) § 12-502 (b), Courts and Judicial Proceedings Article, relative to a de novo appeal from an orphans' court to a circuit court does not mean a transcript of testimony. Hence, we shall affirm the judgment of the Court of Special Appeals in *Lowenthal v. Rome,* 45 Md. App. 495, 413 A.2d 1360 (1980). It reversed an order of the Superior Court of Baltimore City dismissing an appeal to it from the Orphans' Court of Baltimore City.

Pilar Lowenthal et al. sought judicial probate in the Orphans' Court of Baltimore City of a document dated March 3, 1976, which they said was the last will and testament of Jean Arthur Lowenthal. This was opposed by Morton E. Rome, surviving personal representative of Jean Arthur Lowenthal under a will which earlier had been admitted to administrative probate by that court. The orphans' court heard testimony and then denied judicial probate. An appeal was then entered to the Superior Court of Baltimore City.

Two modes of appeal from orphans' courts are provided by our statutes, to the Court of Special Appeals (§ 12-501) or to the circuit court of the county or the Superior Court of Baltimore City (§ 12-502). If the appeal goes to the Court of Special Appeals the normal appellate processes would be followed since its jurisdiction is appellate only. *Shell Oil Co. v. Supervisor,* 276 Md. 36, 343 A.2d 521 (1975). If the appeal is under § 12-502, however, it is to "be heard de novo by the appellate court [which is to] give judgment according to the equity of the matter." The nub of this controversy is found in § 12-502 (b). It states:

> An appeal pursuant to this section shall be taken by filing an order for appeal with the register of wills within 30 days after the date of the final judgment from which the appeal is taken. Within 30 days thereafter the register of wills shall transmit a transcript of the proceedings to the court to which

the appeal is taken unless the orphans' court from which the appeal is taken extends the time for transmitting the transcript.

The complete record by way of original papers was transmitted to the Superior Court of Baltimore City by the Register of Wills of Baltimore City. However, the appeal was dismissed because there was no transcript of testimony included.

The statutes in question are comparatively new. The origin of that relative to transmitting "a transcript of the proceedings" can be traced, however. Prior to the enactment of Chapter 35 of the Acts of 1949 Code (1939) Art. 5, § 69 provided:

> If upon an appeal being entered in the orphans' court, the parties shall mutually agree, and enter their assent in writing, to be filed by the register of wills, that the appeal shall be made to the circuit court for the county, or superior court of Baltimore City, the orphans' court shall direct the transcript of the proceedings to be transmitted to the circuit court, or superior court of Baltimore City, whose decision shall be final.

Chapter 35 of the Acts of 1949 amended that section in virtually the language of the present day to provide that a party deeming himself aggrieved by a decree, order, decision or judgment of the orphans' court might appeal to the circuit court for the county or to the Superior Court of Baltimore City "in lieu of the direct appeal to the Court of Appeals provided in Section 64 of . . . Article [5]." Provision was then made for the case to be heard de novo and for the further right of appeal to this Court. The statute was silent relative to the record.

The present § 12-502 (b) is virtually the same as Code (1957) Art. 5, § 26. We know precisely from whence it came since Chapter 399 of the Acts of 1957 repealed the preexisting Art. 5 and enacted a new one. Our Standing Committee on Rules of Practice and Procedure had been at

work for a number of years prior to 1957. Its Twelfth Report was adopted by the Court on July 18, 1956, effective January 1, 1957, thus bringing into being the Maryland Rules. Prior to that time many provisions relative to practice and procedure were scattered through the Code. As a part of the work of the Rules Committee a subcommittee composed of the Honorable William C. Walsh, H. Vernon Eney, Esq., and C. Keating Bowie, Esq., worked on Chapter 800 relative to appeals. A part of their work included the drafting of statutes necessary as a result of the rules revisions. Their printed tentative draft under date of October 1955 of a bill to revise, repeal, and reenact Art. 5 and certain sections of Arts. 26, 36, and 93 ultimately became Chapter 399 of the Acts of 1957. What was enacted as Art. 5, § 26 was in the exact words of their proposal.

To better understand the language used it is necessary to point out to this generation of lawyers that in the not too distant past, before the creation of the Court of Special Appeals when all appeals came directly to this Court, the original papers were not sent up on appeal as is done today. This was changed as of June 1, 1953, by the adoption by this Court of what was known as Rule 10 providing for the sending forward of original papers. Before that time clerks or registers made up certified copies of the records in their respective offices which were known as "transcripts of records."

The obvious origin of the statute drafted by the subcommittee is former Rule 7 of this Court. It provided:

> All appeals allowed from orders or decrees of the Orphans' Courts to the Court of Appeals, shall be taken and entered within thirty days after such order or decree appealed from; and the Register of Wills shall make out and transmit to the Court of Appeals, under his hand and the seal of his office, a transcript of the record of proceedings in such case, within thirty days after the appeal prayed; but in such transcript no paper or proceeding, not necessary to the determination of the appeal, shall be incorporated.

The same language appeared in Code (1951) Art. 5, § 66. The antecedents of that section seem to be Chapter 101 of the Acts of 1798 and Chapter 27 of the Acts of 1842. The latter called for "a full transcript or record of the whole proceedings of the court in such action or other proceedings . . . ."

Similar language relative to "transcripts of records" is found elsewhere. For instance, Rule 6 spoke of "transcripts of records, on appeals from Courts of Equity . . . ." The same language was in Code (1951) Art. 5, § 37. Rule 10 referred to "any appeal . . . taken in a Court of Law or Equity, or applications to take up the record as upon Writ of Error allowed" and the requirement that the clerk should make out and transmit to this Court "a transcript of the record of proceedings," the same language which appeared in Code (1951) Art. 5, § 44. In fact, in *Miller v. Mencken*, 124 Md. 673, 93 A. 219 (1915), when the Court was required to interpret the predecessor of Code (1951) Art. 5, § 66 to determine whether or not a register of wills was required to transmit the record prior to payment of costs, Judge Constable referred for the Court to the other statutes and said, "The words are exactly as those used in the section in regard to clerks of courts of law and equity performing the same duty . . . ." *Id.* at 677.

Code (1951) Art. 75, §§ 111-124 dealt with the former procedure for removal of cases from one court to another for trial. The term "transcript of record" appears in a number of such sections.

In this case Rome points in support of his position to *Monumental Brewing Co. v. Larrimore,* 109 Md. 682, 72 A. 596 (1909), in which the Court quoted from *Strom v. Montana C.R.R.,* 81 Minn. 346, 348, 84 N.W. 46 (1900), to the effect that the term "proceedings" in its most comprehensive sense "includes every step taken in a civil action, except the pleadings." The statement in *Monumental* must be put in its context. What was before the Court was the propriety of the trial judge's instructions to the jury. Monumental was taking exception to his refusal to grant the following prayer:

The Court instructs the jury that under the *proceedings* in this case there is no evidence legally sufficient to entitle the plaintiff to recover, and therefore the verdict of the jury must be for the defendant. [(Emphasis added.)]

The Court held that the prayer was properly rejected. In so doing it commented that as it and another prayer "ma[d]e no reference to the pleadings, the question presented by them was, as has frequently been decided by this Court, whether the facts that might properly be found by the jury from the evidence constituted a good cause of action." It said that the reference to "proceedings" could not be regarded as having been made to the pleadings "as the two words have neither technically nor ordinarily the same meaning." *Id.* It was in this context that the Court said:

The pleadings in a case consist of the statements of the litigants in legal form of the facts constituting the cause of action and grounds of defense by which the issue is made up. The proceedings in an action at law, on the other hand, consist rather of the successive acts done and steps taken as parts of the suit during its progress, whether by Court, counsel, clerk or jury. [*Id.* at 687.]

It then went on to quote from the Minnesota case, saying:

Without adopting all of the views expressed in the cases to which we have referred, we think that the words "pleadings" and "proceedings" are not sufficiently alike in import to be interchangeably employed in instructions to juries.

When it is desired in framing prayers to make special reference to the pleadings in the case it should be done by referring to them as such. [*Id.* at 688.]

The Minnesota court was involved in construction of a statute which referred to "[a] party to the record of any civil

action or proceeding" and the right of an adverse party "upon the trial thereof" to call and examine such persons "as if under cross-examination . . . ." It was contended that the authorization for enforced appearance was "only upon the trial of a civil action" and thus there was error in requiring testimony on a motion to dismiss for lack of jurisdiction. It was in this context that the court said:

> This construction gives no effect to the word "proceeding," as used in this statute. In its most comprehensive sense, the term "proceeding" includes every step taken in a civil action, except the pleadings. It is clear that the term is not used in this statute in this broad sense, and equally clear that it is not used as the synonym of "civil action." [*Id.* at 348-49.]

Rome also relies on *Conway v. Ford Motor Company,* 48 Ohio App. 2d 233, 237, 356 N.E.2d 762, 765 (1976), which it is claimed "found that the meaning of 'transcript of proceedings' was 'a verbatim transcription of the trial proceedings, including the testimony and exhibits, which is prepared and certified by the court reporter.' " Again, that quotation has to be placed in context. The appeal there was one relative to workmen's compensation. It was contended that the claimant had failed to establish by credible and competent expert medical testimony that he had suffered an aggravation or a substantial aggravation of a preexisting condition. The appellant was relying upon the deposition of a physician called on behalf of the claimant. The rules required a verbatim transcript of proceedings, a narrative statement, or an agreed statement of facts. The clerk was specifically directed by the appellant not to prepare a trial transcript. The issue was said to be "the status of a witness's deposition when it is filed with the clerk of courts." There was nothing in the record before the appellate court to show whether the individual "was a witness at the trial either in person or by the reading of his deposition." It was in this context that the court said:

> The mere filing of a deposition of a witness with the clerk of courts pursuant to Civil Rules 30 (F) and 32 (A) does not automatically make such deposition a part of the transcript of proceedings. The transcript of proceedings is a verbatim transcription of the trial proceedings, including the testimony and exhibits, which is prepared and certified by the court reporter pursuant to Appellate Rule 9 (B). [*Id.* at 237.]

It is suggested that the "rationale of the Court of Special Appeals ignores decisions of this Court" in *County Fed. S. & L. v. Equitable S. & L.,* 261 Md. 246, 274 A.2d 363 (1971), and *Volz v. State Roads Commission,* 221 Md. 209, 156 A.2d 671 (1959), both of which involved de novo proceedings. Neither case is analogous to the one at bar. *Volz* was a condemnation proceeding brought by the State Roads Commission under former Code (1957) Art. 89B, §§ 10-20. There had been earlier proceedings before the Board of Property Review for Baltimore County pursuant to Art. 89B, § 16. The property owners pursuant to § 18 appealed from the review board's findings and award. The State Roads Commission filed its petition under § 18 for condemnation. The latter section provided that if either party were dissatisfied with the findings there was a right of appeal to the circuit court, that upon appeal the case should be heard and determined under the procedure set forth in Art. 89B and Art. 33A, and that where the property owner sought the appeal it became the duty of the Commission to file the condemnation case after which the case was to "be heard de novo and as if there had been no hearing before the board of property review." The property owner attempted to dismiss his appeal in order to reinstate the determination by the board of review. Judge Horney said for the Court that in enacting the statute then under consideration the General Assembly "intended to and did distinguish between an appeal, *in its ordinary or usual sense,* from other administrative agencies or quasi-judicial boards, and an appeal, *in the nontechnical sense,* from the property review board." *Id.*

214-15. (Emphasis in the original.) The Court determined the statute to be providing for "a condemnation case to be filed in court and heard *de novo* as the new and independent action it is." *Id.* In *Vallario v. State Roads Comm'n,* 290 Md. 2, 426 A.2d 1384 (1981), we have just had occasion to point to the review of the "quick-take" statutes relative to acquisition of land for roads which formerly existed in Code (1957) Art. 89B, §§ 9-20 made by Judge Barnes for the Court in *State Roads Comm'n v. Pumphrey,* 260 Md. 633, 637-46, 273 A.2d 81 (1971). Art. 89B did not provide the procedures for condemnation. It did specify circumstances under which the State Roads Commission was to proceed to enter a suit to condemn under Art. 33A pertaining to eminent domain.

*County Federal* was an administrative appeal under Maryland Rule B1 et seq. concerning an application for a charter under Code (1957, 1966 Repl. Vol.) Art. 23, § 161M to the Board of Building, Savings and Loan Commissioners. Art. 23, § 161H (e) provided that the court to which the appeal was taken was to "hear the matter de novo without a jury . . . ." Judge Finan in *County Federal* relied on *Volz* in determining for the Court that we could not "accept the proposition that the appeal *de novo* contemplated by Article 23, § 161H (e), is to be considered in the sense of a new proceeding, which we believe to be the purest form of a *de novo* appeal." *Id.* at 257. The Court determined that "an appeal providing for new evidence on the issues appealed from as well as a consideration of the record before the Board, is what was intended." *Id.* at 258.

In construing the statute here in question we are obliged by our prior holdings to ascertain and carry out the real legislative intent; to consider the language of the enactment in its natural and ordinary signification; to not insert or omit words to make a statute express an intention not evidenced in its original form; and, if reasonably possible, absent a clear indication to the contrary, to read the statute so that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless, or nugatory. See *Police Comm'r*

*v. Dowling,* 281 Md. 412, 418-20, 379 A.2d 1007 (1977), referring to a number of our prior cases, together with the more recent cases of *Department of Public Safety v. Le Van,* 288 Md. 533, 544-45, 419 A.2d 1052 (1980); *Dorsey v. Beads,* 288 Md. 161, 175-76, 416 A.2d 739 (1980); and *Messitte v. Colonial Mortgage Serv.,* 287 Md. 289, 293-94, 411 A.2d 1051 (1980).

In *Estate of Soothcage v. King,* 227 Md. 142, 146, 176 A.2d 221 (1961), Chief Judge Brune observed for the Court, "The appeal to the Circuit Court under Sec. 25 of Art. 5 of the Code (1957) required a trial *de novo.* Therefore, neither the testimony before the Orphans' Court nor its findings thereon are now of any controlling effect," a comment equally applicable to this proceeding under the successor to Art. 5, § 25. As we pointed out earlier, the statute here obviously intends a somewhat different procedure for a determination in a circuit court than would be true on an appeal to the Court of Special Appeals. The term "transcript of proceedings" has a historic connotation in the matter of Maryland appeals which does not necessarily include a transcript of testimony. In a proceeding such as this a circuit court or the Superior Court of Baltimore City is not engaged in an appellate review of whether the orphans' court made the proper determination upon the basis of what was before it, but is expected to make its own determination on the evidence brought before it. To require the preparation of a transcript of testimony would be to dictate the performance of a superfluous act. Accordingly, we conclude that Judge Liss was correct when he said for the Court of Special Appeals:

As we conclude the *de novo* hearing in this case is a new hearing requiring the appellate court to hear the case *ab initio,* and as we find Section 12-502 does not impose a duty to have the testimony written and filed with the court, we conclude that the trial judge erred in dismissing the appeal in this case. [*Id.* 45 Md. App. at 503.]

*Judgment affirmed; appellants to pay the costs.*