# MICHAEL F. MESSITTE *v.* COLONIAL MORTGAGE SERVICE COMPANY ASSOCIATES, INC.

[No. 143, September Term, 1978.]

*Decided March 11, 1980.*

The cause was argued before SMITH, DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ., and reargued before MURPHY, C. J., and SMITH, DIGGES, COLE, DAVIDSON and RODOWSKY, JJ., and RIDGELY P. MELVIN, JR., Associate Judge of the Court of Special Appeals, specially assigned.

Argued and reargued by *Peter J. Messitte,* with whom were *Barnett Rosenberg* and *Messitte & Rosenberg, P.A.* on the brief, for appellant.

On reargument argued by *Alfred Mollin,* with whom were *Stuart E. Schiffer* and *Leonard Schaitman* on the brief, for the United States as *amicus curiae.*

Argued and reargued by *M. Michael Cramer,* with whom were *Ronald D. West* and *Levitan, Ezrin, Cramer, West & Weinstein, Chartered* and *Michael G. Trainer* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

Michael F. Messitte sold his home to a military veteran who obtained VA guaranteed financing from Colonial Mortgage Service Company Associates, Inc. Messitte then brought a class action against Colonial. The essence of his complaint is that since the buyer-borrower had paid Colonial a 1-percent origination fee, Colonial violated a regulation of the Veterans Administration when it charged him at settlement for certain items. He seeks to recover these sums. A trial judge (Shearin, J.) granted Colonial's motion for summary judgment. We shall affirm.

Messitte's claim is based on VA Regulation 36:4312 (D), Part I (codified as 38 C.F.R. § 36.4312) as interpreted by

Loan Guaranty Release No. 16-69.[1] It is the contention of

1. The release stated:

VETERANS ADMINISTRATION
Veterans Benefits Office
2033 M Street NW
Washington, D. C. 20421

November 13, 1969
Your File Reference:
In Reply Refer To: 372(26)
LOAN GUARANTY RELEASE NO. 16-69

TO: All Program Participants
SUBJ: Unauthorized Loan Closing Charges

1. It has come to our attention that in some instances settlement sheets show the veteran purchaser has been charged with a 1% origination charge as permitted by VA Regulation 36:4312 and the seller has been charged with closing costs normally charged to the purchaser or which historically have been included in the 1% origination charge. Some examples of these duplicate charges which have been brought to our attention are:

   a. Lender's inspection fee
   b. Preparation of loan papers
   c. Notary fee
   d. Settlement fee
   e. Title examination

2. The pertinent part of VA Regulation 4312(D), Part I reads as follows:

"A. The veteran may pay reasonable and customary amounts for any of the following items:

   (1) Fee of VA appraiser and of compliance inspectors designated by VA except appraisal fees incurred for the predetermination of reasonable value requested by other than veteran or lender.

   (2) Recording fees and recording taxes or other charges incident to recordation.

   (3) Credit report.

   (4) That portion of taxes, assessments, and other similar items for the current year chargeable to the borrower and his initial deposit (lump-sum payment) for the tax and insurance account.

   (5) Hazard insurance required by VA Regulation 4326.

   (6) Survey, if required by lender or veteran.

   (7) Title examination and title insurance, if any.

   (8) Such other items as may be authorized in advance by the Chief Benefits Director as appropriate for inclusion under this subparagraph as proper local variances.

B. A lender may charge and the veteran may pay a flat charge not exceeding 1% of the amount of the loan, provided that such flat

Messitte that under this regulation, as interpreted by this release, Colonial was forbidden to collect from him as seller such fees as a lender's inspection fee, notary fee, and settlement fee.

After a pretrial conference the trial court directed "that an appropriate pleading designed to test the validity, construction and applicability of VA Loan Guaranty Release 16-69, sh[ould] be filed by the Defendant within 30 days . . . ." In granting summary judgment in favor of Colonial, he said in pertinent part:

> The regulation on its face purports to and does in some detail govern the dealings between lenders and veteran borrowers. Nowhere in it is there any express reference to the sellers of property to veteran borrowers. Nor, indeed, does the Court find any proper basis for holding that sellers are intended to be the beneficiaries of Subsection (b) by necessary implication.
>
> In reaching that conclusion, the Court believes that it need go no further than the language of that section of the regulation itself. In construing statutes, rules, regulations, ordinances and the like, there is no necessity for resorting to extrinsic aids to construction unless there be some latent or patent ambiguity in the enactment, rule or regulation so construed.
>
> I find no such latent or patent ambiguities in that language.
>
> It says, "A lender may charge and the veteran may

charge shall be in lieu of all other charges relating to costs of origination not expressly specified and allowed in this schedule."
3. Collection of the 1% origination fee and also collection from the seller for fees in addition to or which duplicate those allowed and collected from the purchaser under Section 4312(D), Part I, subparagraph A of VA Regulations is contrary to the intent of this Regulation. Lenders are expected to take steps immediately to see that this practice is discontinued.

We are advised that this release was not issued nationally, but was issued under the signature of a loan guaranty officer of the VA field office in Washington, D. C., one of forty-nine regional offices.

pay a flat charge not exceeding one percent of the amount of the loan provided that such flat charge shall be in lieu of all other charges relating to cost of origination expressly specified and allowed in this schedule."

The plaintiff earnestly contends that the charge in lieu of all other charges of necessity refers to charges made to sellers.

The context in my view permits of no such construction.

Messitte appealed to the Court of Special Appeals. We granted the writ of certiorari prior to consideration of the matter by that court.

After argument before us last spring, we invited the Department of Justice to submit a brief amicus curiae. We have now had the benefit of that brief after which the matter was reargued.

We have just said in *Brown v. Brown,* 287 Md. 273, 412 A.2d 396 (1980), citing *Kadan v. Bd. of Sup. of Elections,* 273 Md. 406, 329 A.2d 702 (1974), and *New Cent. Co. v. George's Creek Co.,* 37 Md. 537 (1873), "Generally speaking, the same rules that are applicable to the construction of statutory language are employed in interpreting constitutional verbiage." We know of no reason why any other rule should be used for the interpretation of regulations of an administrative agency. See, generally, *Miller v. United States,* 294 U.S. 435, 439, 55 S. Ct. 440, 79 L. Ed. 977, *rehearing denied,* 294 U.S. 734, 55 S. Ct. 635, 79 L. Ed. 1262 (1935). For the proposition that the same rules apply see 2 Am. Jur. 2d *Administrative Law* § 307 (1962), and 73 C.J.S. *Public Administrative Bodies and Procedure* § 105 (1951). We discussed the rules for statutory construction in *Police Comm'r v. Dowling,* 281 Md. 412, 379 A.2d 1007 (1977). A number of cases were cited for each of the statements there made. That which is pertinent to the case at bar includes:

The cardinal rule of statutory construction is to

> ascertain and carry out the real legislative intent. In determining that intent the Court considers the language of an enactment in its natural and ordinary signification. . . . A corollary to this rule is that if there is no ambiguity or obscurity in the language of a statute, there is usually no need to look elsewhere to ascertain the intent of the General Assembly. . . . A court may not insert or omit words to make a statute express an intention not evidenced in its original form. . . . The General Assembly is presumed to have had, and acted with respect to, full knowledge and information as to prior and existing law and legislation on the subject of the statute and the policy of the prior law. . . . Absent a clear indication to the contrary, a statute, if reasonably possible, is to be read so that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless, or nugatory . . . . [*Id.* at 418-19.]

See also *In re James S.,* 286 Md. 702, 705, 410 A.2d 586 (1980); *Board v. Stephans,* 286 Md. 384, 388, 408 A.2d 1017 (1979); *Harbor Island Marina v. Calvert Co.,* 286 Md. 303, 311, 407 A.2d 738 (1979); and *Baltimore Gas & Elec. v. Department,* 284 Md. 216, 219, 395 A.2d 1174 (1979).

38 C.F.R. 36.4312 (d) (2) provides, in pertinent part:

> A lender may charge and the veteran may pay a flat charge not exceeding 1 percent of the amount of the loan, provided that such flat charge shall be *in lieu of all other charges relating to costs of origination* not expressly specified and allowed in this schedule. (Emphasis supplied.)

As the Government puts it in its brief, "At issue in this case is the meaning of 'all other charges relating to costs of

origination.' " Thus, we consider paragraph (d) in the context of the entire regulation. 38 C.F.R. 36.4312 provides:

> (a)  No charge shall be made against, or paid by, *the borrower* incident to the making of a guaranteed or insured loan other than those expressly permitted under the schedule set forth in paragraph (d) of this section. . . . (Emphasis supplied.)

The Government points out in its brief amicus curiae:

> The focus of ¶(a) is exclusively and explicitly upon the relations between the lender and the *borrower.* Sellers and the relations between lenders and sellers are not implicated in ¶(a). Paragraph (d), clearly, is not an independent element in the regulation, but, rather, is devised to supplement ¶(a) and is thus subordinate to ¶(a). Paragraph (d), that is, consists only of a list of permissible charges, and it is ¶(a) which identifies the parties to whom this list of permissible charges is intended to apply — lenders and borrowers. (Emphasis in original.)

We agree. The regulation in question simply does not prohibit a lender from imposing settlement charges upon the seller even though a 1-percent origination fee has been levied upon the veteran-buyer.

Messitte suggests, "The Trial Court did not address at all a critical threshold proposition of Appellant's case: That by virtue of [Colonial's] long delay in challenging L.G.R. No. 16-69 (seven years from its promulgation until the present suit) and by virtue of its acceptance of full V.A. benefits all the while — the loan guaranty and points against V.A. sellers most prominent among these — [Colonial] has *waived* its right to challenge the V.A. directive now." (Emphasis in original.) He argues that "a party [is precluded] from asserting, to another's disadvantage, a right inconsistent with a position previously taken by him," that "where one having the right to accept or reject a transaction takes and retains benefits thereunder, he ratifies the transaction, is bound by it, and cannot avoid its obligation or

effect by taking a position inconsistent with it." He says, "Especially insofar as statutes, regulations, and administrative orders and rulings are concerned, one who might have rejected or contested the benefits of these governmental provisions, but who chooses to accept them without challenge, will be later estopped to deny their validity." The only Maryland case cited by him is *Skipjack Cove Marina v. Co. Comm'rs,* 252 Md. 440, 250 A.2d 260 (1969), which hardly supports his position, although it is consistent with his argument that one may not accept the benefits of a given action and then later attack it. The fact that Colonial made loans approved by the Veterans Administration and as a part of the making of such loans received an origination fee paid by a borrower in no way establishes or even suggests that Colonial has in some manner accepted the benefit of this particular interpretation of the regulation. The regulation speaks for itself. We point out also that there is no allegation here that Messitte has in any way been misled to his injury or changed his position for the worse by virtue of any action on the part of Colonial. As a matter of fact he indicates that he was not even aware of the regulation until "several months after his settlement ...." Thus, the doctrine of equitable estoppel would not be applicable. *Dahl v. Brunswick Corp.,* 277 Md. 471, 487, 356 A.2d 221 (1976), and *Savonis v. Burke,* 241 Md. 316, 319, 216 A.2d 521 (1966).

The trial judge properly entered summary judgment in favor of Colonial. In the light of our conclusions we are not obliged to consider the various other reasons advanced by Colonial for an affirmance.

> *Judgment affirmed; appellant to pay the costs.*