Rosetta HEASTIE and Kevin
Heastie, Plaintiffs,

v.

COMMUNITY BANK OF GREATER
PEORIA; Community Financial Ser-
vices, Inc.; U.S. Satellite Systems, Inc.;
First American Mortgage Company;
Alliance Funding Company; and
George Dangeles, Defendants.

No. 88 C 0358.

United States District Court,
N.D. Illinois, E.D.

Aug. 3, 1988.

Daniel A. Edelman, Chicago, Ill., for plaintiffs.

Peter B. Carey, Chicago, Ill., Daniel Robin, Garr & Robin, Schaumburg, Ill., Marvin A. Miller, Patrick Cafferty, Washlow, Chertow & Miller, George S. Bellas, George Dougherty, Grippo & Elden, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiffs Rosetta Heastie and her son Kevin ("Heasties") brought this action against the various defendants for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968 (West Supp.1988) and for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), Ill.Ann.Stat. ch. 121½ ¶¶ 261–272 (Smith–Hurd 1960 & Supp. 1988). Currently before the Court are motions by defendants First American Mortgage Company ("FAMCO") and Alliance Funding Company ("Alliance") to dismiss Count IV of the complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons noted below, these motions are denied.

### Facts [1]

When Mrs. Heastie, a relatively unsophisticated elderly woman, first contacted FAMCO about refinancing a loan with another lender, FAMCO told her that it was a lender and would provide the financing. At the closing of the loan, Mrs. Heastie was presented with loan papers indicating the lender was Alliance Funding Company instead of FAMCO. Finance charges or "points" totalling nine percent of the loan

were also assessed, of which $760 was paid to FAMCO and $147 to Alliance. Faced with threats of foreclosure on her home from her previous lender, Mrs. Heastie reluctantly signed the loan papers.

The complaint alleges that FAMCO and Alliance operated under an agreement wherein FAMCO would misrepresent itself as a lender to potential borrowers who, like Mrs. Heastie, were under great financial pressure to obtain loans. This misperception would continue until closing when Alliance would then enter the picture as the lender, and FAMCO would take some form of brokerage fee from the finance charges. The complaint further alleges that their transaction took place pursuant to this scheme, and that Alliance knew of the practices FAMCO employed in soliciting business.

### Discussion

The Heasties contend that FAMCO's misrepresentation of itself as a lender, its nondisclosure of its role as agent of Alliance or mortgage broker and its use of these practices to exact "oppressive" finance charges violated Section 2 of the Consumer Fraud Act, Ill.Ann.Stat. ch. 121½ ¶ 262 (Smith–Hurd 1960 & Supp.1988). They also contend that Alliance violated Section 2 by knowingly benefitting from FAMCO's alleged fraud.

Defendants FAMCO and Alliance contend that these allegations do not state a claim for fraud under the Consumer Fraud Act. They advance a number of reasons for this claim: (1) FAMCO's misrepresentation was not material in that the Heasties discovered the truth at closing and proceeded to sign the loan papers anyway. Further, the misrepresentation was not material because the Heasties have not alleged that they would have acted differently had they known FAMCO's true role; (2) The Heasties have made no allegation of misrepresentation of material fact against Alliance, a requirement to state a claim under the Consumer Fraud Act; (3) The Heasties'

---

1. On a motion to dismiss the allegations in the complaint must be liberally construed, and the complaint should not be dismissed unless it is clearly beyond doubt that the plaintiff can prove no set of facts in support of the claim entitling her to relief. *Lewis v. Local Union No. 100 of Laborers' Int'l Union,* 750 F.2d 1368, 1373 (7th Cir.1984).

claim under the Act is preempted by the Truth in Lending Act and its accompanying regulations; and (4) The claim of fraud is not pleaded with sufficient particularity under Fed.R.Civ.P. 9(b).

### Materiality

Defendants' first argument in support of their motions to dismiss is that FAMCO's misrepresentation was not material. Section 2 of the Consumer Fraud Act provides:

> Unfair methods of competition and unfair or deceptive acts or practices *including but not limited to* the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act," approved August 5, 1965 in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.

Ill.Ann.Stat. ch. 121½ ¶ 262 (Smith–Hurd 1960 & Supp.1988) (emphasis added). Section 11a of the Act provides: "This act shall be liberally construed to effect the purposes thereof." Ill.Ann.Stat. ch. 121½ ¶ 271a (Smith–Hurd 1960 & Supp.1988). *See also Hurlbert v. Cottier,* 56 Ill.App.3d 893, 896, 14 Ill.Dec. 538, 372 N.E.2d 734 (4th Dist.1978). Furthermore, the Illinois Supreme Court, in rejecting a challenge to the Consumer Fraud Act premised on vagueness, noted:

> The terms "unfair practice" and "unfair methods of competition" are inherently insusceptible of precise definition. As we noted when the issue of the vagueness of section 2 was first before us, effective regulation requires that the concept be flexible, defined on a case-by-case basis "in view of the futility of

attempting to anticipate and enumerate all the unfair methods" and practices that fertile minds might devise.

*Scott v. Association for Childbirth at Home, International,* 88 Ill.2d 279, 290, 58 Ill.Dec. 761, 767, 430 N.E.2d 1012, 1018 (1981). (Citation omitted). Finally, the Seventh Circuit has interpreted the meaning of "unfair practice" in the context of section 5(a) of the Federal Trade Commission Act as a practice which "offends established public policy and ... is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Spiegel v. F.T.C.,* 540 F.2d 287, 293 (7th Cir.1976). Given this authority, it is clear that the Court has wide discretion to interpret the types of conduct that fall under the purview of the Consumer Fraud Act. *See Perrin v. Pioneer National Title Ins. Co.,* 83 Ill.App.3d 664, 672, 39 Ill.Dec. 124, 130, 404 N.E.2d 508, 514 (1st Dist.1980) (summarizing Illinois law).

Nevertheless, there are certain elements needed to state a cause of action under the Consumer Fraud Act. Section 10a of the Act requires that one must be damaged in order to bring a private action. Ill.Ann. Stat. ch. 121½ ¶ 270a (Smith–Hurd 1960 & Supp.1988). The Seventh Circuit, along with Illinois appellate courts, has adopted the position that, in affirmative misrepresentation or omission case, plaintiffs must allege the misrepresentation of a material fact. *General Motors Acceptance Corp. v. Grissom,* 150 Ill.App.3d 62, 65, 103 Ill.Dec. 447, 448, 501 N.E.2d 764, 765 (5th Dist. 1986). *See also Graphic Sales, Inc. v. Sperry Univac Division,* 824 F.2d 576, 580 (7th Cir.1987). The sufficiency of the Heasties' allegation of misrepresentation of a material fact is at issue here.

█ The Heasties allege that FAMCO misrepresented itself as a lender, when in fact it was a broker or agent of Alliance. The defendants argue, however, that this fact was not material because the Heasties signed the loan papers after learning FAMCO's true role at the closing; or, alternatively, that the Heasties have not alleged they would have acted differently had they known of FAMCO's true role.

With regard to the defendants' first contention, we are not inclined to hold that FAMCO's true role was immaterial based on the fact that the Heasties signed the loan papers. It is true that the Heasties became aware of the respective roles of FAMCO and Alliance shortly before they signed the loan papers, because the papers themselves revealed this information. Yet, this was a key step in the scheme alleged against FAMCO and Alliance. FAMCO misrepresented itself in its initial contact with Mrs. Heastie, at a time when its status as broker or lender might have had a bearing on Mrs. Heastie's conduct. Then, at closing, as pressure to avoid foreclosure on her home mounted, the truth was revealed in the loan papers. By that time her need for money was paramount, and so she signed. The defendants should not escape liability because of their skillful planning.

The relevant point in time to assess the materiality of FAMCO's misrepresentation as to its role is at the time it was made, when Mrs. Heastie first contacted FAMCO. Defendants' second contention comes into play at this point. The Heasties have not alleged that they would have done anything differently had they known FAMCO's role even at the time of their first contact with FAMCO. In fact, it might be suggested that because of the financial pressures on her, Mrs. Heastie would have been indifferent to dealing with a broker or lender. In that case, FAMCO's role would not be material. On the other hand, her precarious financial position might lead one to conclude that she was interested in minimizing any further indebtedness, in which case, whether to deal with a broker and pay brokerage fees would be an important consideration.

In *Barrington Press v. Morey*, 752 F.2d 307 (7th Cir.1985), the Seventh Circuit analyzed the problem of determining the materiality of a misrepresentation:

A misrepresentation is material if it relates to a matter upon which plaintiff could be expected to rely in determining to engage in the conduct in question.

752 F.2d at 310 (quoting *Mother Earth, Ltd. v. Strawberry Camel, Ltd.*, 72 Ill.

App.3d 37, 49, 28 Ill.Dec. 226, 237, 390 N.E.2d 393, 404 (1st Dist.1979)). It is reasonable to conclude that a $700 broker's fee is a matter upon which a reasonable person could be expected to rely in determining whether to engage a broker or to deal directly with a lender. Even in the presence of financial pressure, it cannot be said that such a fee is of no relevance. Based upon this standard, we conclude that FAMCO's misrepresentation was of a material fact.

Defendants, however, cite *Kellerman v. Mar–Rue Realty & Builders, Inc.*, 132 Ill.App.3d 300, 87 Ill.Dec. 267, 476 N.E. 2d 1259 (1st Dist.1985), and *Perrin v. Pioneer National Title Ins. Co.*, 83 Ill.App.3d 664, 39 Ill.Dec. 124, 404 N.E.2d 508 (1st Dist.1980), apparently for the proposition that a plaintiff *must* allege, as an element of the cause of action, what she would have done differently had she known the truth. We disagree. In *Glazewski v. Coronet Insurance Co.*, 108 Ill.2d 243, 91 Ill.Dec. 628, 483 N.E.2d 1263 (1985), the Illinois Supreme Court detailed the pleading requirements for *common law* fraud:

The plaintiff must allege that the defendant made a false representation of material fact knowing or believing it to be false and doing it for the purpose of inducing the plaintiff to act. The plaintiff must also allege his reasonable belief in and reliance on the statement to his detriment.

*Glazewski*, 108 Ill.2d at 249, 91 Ill.Dec. at 631, 483 N.E.2d at 1266 (citations omitted). Section 2 of the Consumer Fraud Act suggests a dilution of these requirements, declaring that the acts prohibited under the Act "are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." Ill.Ann.Stat. ch. 121½, ¶ 262 (Smith–Hurd 1960 & Supp. 1988). Section 10a, in establishing a private right of action, requires only that the individual has been damaged. Ill.Ann.Stat. ch. 121½ ¶ 270a (Smith–Hurd 1960 & Supp. 1988). Illinois courts have also held that one need not prove all the elements of common law fraud in order to recover under the Consumer Fraud Act. *People ex rel. Fahner v. American Buyer's Club,*

115 Ill.App.3d 759, 761, 71 Ill.Dec. 216, 218, 450 N.E.2d 904, 906 (3d Dist.1983). Finally, it has been held that the Consumer Fraud Act was designed to broaden the tort of fraud. *Kellerman*, 132 Ill.App.3d at 306, 87 Ill.Dec. at 271, 476 N.E.2d at 1263.

Given all this, we do not find that imposing a stricter pleading requirement than even common law fraud, as suggested by defendants, would further the purpose of the Consumer Fraud Act. Of course, an allegation of how one would have acted differently may be raised to support an inference of materiality. Alternatively, the absence of such an allegation may *suggest* a lack of materiality. *See Perrin*, 83 Ill. App.3d at 674, 39 Ill.Dec. at 131, 404 N.E. 2d at 515. In this case, however, the size of the fee charged by FAMCO is sufficient to demonstrate by the Seventh Circuit's objective standard the materiality of FAMCO's misrepresentation. Accordingly, we reject defendants' first ground for their motions to dismiss.

### Preemption

■ Defendant Alliance argues that plaintiffs' claim under the Consumer Fraud Act is preempted by the Truth in Lending Act ("TILA"), 15 U.S.C.A. § 1601 *et seq.* (West 1982), and its accompanying regulations ("Regulation Z"), 12 C.F.R. § 226.1 *et seq.* (1988). Alliance points to 15 U.S.C.A. § 1635 (West 1982) ("the recission provisions") of the TILA as evidence that Congress intended to fully occupy the field regulating credit transactions secured by mortgages on primary dwellings. Alliance also suggests that its conduct was "specifically authorized" by the TILA and thus falls under the provision of the Consumer Fraud Act exempting from liability for "actions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." Ill.Ann.Stat. ch. 121½ ¶ 270b (Smith–Hurd 1960 & Supp.1988). Compliance with the TILA is, Alliance argues, a complete defense to all claims brought under the Consumer Fraud Act.

We reject both arguments. Congress did not intend to fully occupy the field regulating such transactions, nor was Alliance's conduct specifically authorized by the TILA. There is explicit language in the TILA and Regulation Z detailing their preemptive effect. State disclosure laws inconsistent with the TILA are preempted to the extent of the inconsistency. 15 U.S. C.A. § 1610(a)(1). This provision states, however, that other state disclosure requirements are not affected. *Id.* Section 226.28 of Regulation Z gives more detail:

A state law is inconsistent if it requires a creditor to make disclosures or take actions that contradict the requirements of the federal law. A state law is contradictory if it requires the use of the same term to represent a different amount or different meaning than the federal law, or if it requires the use of a term different from that required in the federal law to describe the same item.

12 C.F.R. § 226.28(a). There are, in addition, procedures which an interested party may follow in order to have state disclosure requirements declared "substantially the same in meaning" as the TILA requirements, thereby avoiding preemption. 15 U.S.C.A. § 1610(a)(2) (West 1982).

■ It is clear from the narrow wording of these provisions that preemption was intended to extend only to specific state disclosure requirements, in the interest of preserving *uniform* methods of disclosure. *See* 12 C.F.R. § 226.28(a). This view comports with the stated purpose of the TILA to "assure a *meaningful* disclosure of credit terms ... and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C.A. § 1601(a) (West 1982) (emphasis added). Preemption does not extend to general state statutes prohibiting fraud. *Cf. Kellerman v. MCI Telecommunications Corp.*, 112 Ill.2d 428, 443, 98 Ill.Dec. 24, 30, 493 N.E.2d 1045, 1051 (Consumer Fraud Act claim for deceptive advertising not preempted by Federal Communications Act), *cert. denied*, 479 U.S. 949, 107 S.Ct. 434, 93 L.Ed.2d 384 (1986); *F.E.L. Publications v. National Conference of Catholic Bishops*, 466 F.Supp. 1034, 1046 (N.D.Ill.

1978) ("alleged infringing activity not within scope of federal law").

Section 1635 of TILA, the recission provisions, presents a different issue. The purpose of this provision is to protect consumers in credit transactions secured by an interest on the property used by the consumer as a principal dwelling. 15 U.S.C.A. § 1635(a) (West 1982). *See also N.C. Freed Co. v. Board of Governors of Federal Reserve System*, 473 F.2d 1210, 1216 (2d Cir.1973), *cert. denied*, 414 U.S. 827, 94 S.Ct. 48, 38 L.Ed.2d 61 (1973). The Heasties' transaction with Alliance falls into this category. It might be argued that, despite this Court's analysis of the explicit preemption provisions of the TILA, an additional measure of preemption can be inferred from Section 1635. That section creates a right of recission in the consumer, unlike the other provisions which generally cover the form and content of disclosure. This Court does not find this to be the case. The Supreme Court has stated that:

> Even where Congress has not completely displaced state regulation in a specific area as [this Court has concluded with regard to the TILA], state law is nullified to the extent that it actually conflicts with the federal law. Such a conflict arises when "compliance with both federal and state regulation is a physical impossibility" or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*Fidelity Federal Savings & Loan Association v. De la Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982) (citations omitted). Obviously, compliance with both the TILA and the Consumer Fraud Act is not a physical impossibility— compliance with the TILA does not imply a violation of the Consumer Fraud Act. It also seems that the Consumer Fraud Act promotes rather than hinders the goals of the TILA. The Consumer Fraud Act prohibits, *inter alia*, "deceptive practices [employed] in the conduct of any trade or commerce ..." Ill.Ann.Stat. ch. 121½ ¶ 262 (West 1960 & Supp.1988), thereby promoting the TILA's goal of "the informed use of credit," 15 U.S.C.A. § 1601(a) (West 1982), in a range of conduct larger than that covered by the disclosure provisions in the TILA. Because the Consumer Fraud Act meets this test, this Court cannot infer that the recission provisions should be the sole protection available to consumers involved in this type of transaction.

Alliance's conduct also does not fall under the exemption provision of the Consumer Fraud Act. Alliance points to no provision of the TILA regulating referral agreements between brokers and lenders and "specifically authorizing" its conduct. And this, after all, is the conduct being complained of. The Heasties contend that Alliance and FAMCO had a referral arrangement by which Alliance would "knowingly benefit" from FAMCO's misrepresentations.

The cases cited by defendants can be distinguished. All dealt with facets of the transaction or occurrence closely controlled by the applicable federal statute or regulation. *Lanier v. Associates Finance, Inc.* dealt with disclosure regarding the so-called "Rule of 78's," regulated by 12 C.F.R. § 226.8(b)(7) (at that time). 114 Ill.2d 1, 12, 101 Ill.Dec. 852, 856, 499 N.E.2d 440, 444 (1986). *Aurora Firefighter's Credit Union v. Harvey* dealt with disclosure to persons other than the principal obligor, regulated by 12 C.F.R. § 226.17(d). 163 Ill.App.3d 915, 919, 114 Ill.Dec. 873, 876, 516 N.E.2d 1028, 1031 (2d Dist.1987). *Mario's Butcher Shop & Food Center v. Armour & Co.* dealt with meat labelling requirements regulated by 9 C.F.R. § 317(2)(b). 574 F.Supp. 653, 656 (N.D.Ill. 1983). While compliance with federal regulations may be a complete defense to Consumer Fraud Act complaints centering on particular technical issues (as in the cases above), it should not be a complete defense to allegations of fraudulent schemes. Therefore, we reject Alliance's argument that the Heasties' Consumer Fraud Act count is preempted under federal law.

### Alliance's Liability Under the Consumer Fraud Act

■ Defendant Alliance argues that plaintiffs do not state a claim under the

Consumer Fraud Act because the complaint fails to allege a misrepresentation of material fact *specific* to Alliance. Plaintiffs only allege that Alliance "knowingly benefitted" from FAMCO's misrepresentation. However, it is established at common law that one who knowingly accepts the benefits of fraudulent conduct is also guilty of that fraud. *Shacket v. Philko Aviation Inc.*, 590 F.Supp. 664, 668 (N.D.Ill.1984) (summarizing Illinois law). Given the purpose of the Consumer Fraud Act to deter all forms of unfair and deceptive conduct and to provide remedies to those who have been damaged, it seems only logical and fair to bring Alliance's conduct, which would state a claim at common law, under the prohibition of the Consumer Fraud Act as an unfair practice. In keeping with the Seventh Circuit's definition of "unfair practice," this Court holds that knowingly accepting the benefits of conduct which has fraudulently misled another into making a transaction is an impermissible enrichment, contrary to public policy. *Cf. Spiegel v. F.T.C.*, 540 F.2d 287, 293 (7th Cir.1976).

### Particularity

 Rule 9(b) of the Federal Rules of Civil Procedure requires that allegations of fraud be pleaded with particularity. Reasons for this include, *inter alia*, providing the defendant with enough information to prepare an adequate response. *Baselski v. Paine, Webber, Jackson & Curtis, Inc.*, 514 F.Supp. 535, 540 (N.D.Ill.1981). This rule must be read, however, in conjunction with Rule 8(a), Fed.R.Civ.P., which requires a short and plain statement of the claim. *Tomera v. Galt*, 511 F.2d 504, 508 (7th Cir.1975). In *Tomera* the Seventh Circuit also sketched out the type of allegations necessary to meet the requirement:

> the details, a brief sketch of how the fraudulent scheme operated, when and

where it occurred, and the participants. This is enough. More information can be gathered through discovery.

*Tomera*, 511 F.2d 504, 509. Thus, the plaintiff need not plead evidentiary details. *See Caliber Partners, Ltd. v. Affeld*, 583 F.Supp. 1308, 1311 (N.D.Ill.1984).

 The complaint alleges how FAMCO's and Alliance's scheme operated and, as between the two, who did what. *See Renovitch v. Stewardship Concepts, Inc.*, 654 F.Supp. 353, 360 (N.D.Ill.1987) (plaintiff must particularize as to each defendant). The location can be inferred to be FAMCO's place of business, and, though an exact date has not been given, the time can be inferred to be during the first few months of 1986. This may not be model pleading, but this Court notes that "within a few months" has been held to be sufficient particularity with respect to time. *Caliber Partners, Ltd.*, 583 F.Supp. at 1311 n. 4. In short, the Heasties have given FAMCO and Alliance enough information to frame responsive pleadings. The particularity requirement has been satisfied.[2]

---

In conclusion, for the reasons noted above, we deny FAMCO's and Alliance's motions to dismiss Count IV of the complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6). It is so ordered.

---

**2.** The Court notes that the allegations against Alliance and FAMCO of a *generalized* scheme to defraud the public are made on information and belief. This is not normally allowed, except where knowledge is peculiar to the opposing party and the allegations are supported by a statement of the facts on which the belief is founded. *Duane v. Altenburg*, 297 F.2d 515, 518–519 (7th Cir.1962). In this case, it is reasonable to assume that knowledge of the conspiracy is peculiar to Alliance and FAMCO, and there are, therefore, sufficient factual allegations concerning Mrs. Heastie's transaction with FAMCO and Alliance to permit the allegations to be made on information and belief. *See Hirshfield v. Briskin*, 447 F.2d 694, 697 (7th Cir.1971) (distinguishing *Duane*).