PETER R. BUTITTA *et al.*, Indiv. and on Behalf of all Others Similarly Situated, Plaintiffs-Appellants, v. FIRST MORTGAGE CORPORATION, Defendant-Appellee.

First District (1st Division)   No. 1—90—2174

Opinion filed July 22, 1991.

Much, Shelist, Freed, Denenberg, Ament & Eiger, P.C., and Chertow & Miller, both of Chicago, and Greenberg & Teykl, P.C., of Park Forest (Michael J. Freed, Stuart M. Widman, Christopher J. Stuart, Marvin Miller, and Daniel M. Greenberg, of counsel), for appellants.

Donald A. Shapiro, Ltd., of Chicago (Donald A. Shapiro and Frank A. Moscardini, Jr., of counsel), for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiffs Peter Butitta and Josephine Butitta (Butittas), individually and on behalf of all others similarly situated, filed a class action for damages, injunctive and other relief against First Mortgage Corporation (First Mortgage). Plaintiffs appeal the dismissal of their complaint.

The Butittas filed this class action under Illinois law on behalf of "[a]ll persons or businesses, other than defendant, its subsidiaries, affiliates, directors, officers and/or employees, who, during the period beginning January 1, 1985 to date (the 'Class Period'), sold a single-family residence to a buyer using an FHA or VA insured mortgage funded by First Mortgage Corporation and who paid fees and costs to First Mortgage not permitted to be assessed against the buyer of such residences." Plaintiffs allege that common questions of law or fact predominate over any questions affecting only individual class members.

In the complaint, the Butittas claim that on January 31, 1989, they closed the sale of their home to Deborah Gray at Intercounty Title Company of Illinois. Gray had obtained a residential mortgage insured by the Federal Housing Authority (FHA). Pursuant to the rules and regulations promulgated by the FHA and the Department of Housing and Urban Development, mortgage companies are barred from charging certain costs and fees to the borrower which include a "tax service fee" and a "recording assignment of mortgage fee." At the closing, defendant, as Gray's lender, charged plaintiffs $75 for tax service fee and $12.50 for recording assignment of mortgage fee even though these services were provided for Gray, not plaintiffs. Plaintiffs allege that First Mortgage had no legal right to charge those fees to them. Plaintiffs further allege that First Mortgage did not notify them of these fees until the closing or an unreasonably short time before closing.

Plaintiffs assert that First Mortgage had a policy of charging class members such costs and fees even though it had no legal right to do so. First Mortgage knew that the class members would be compelled to either pay such costs and fees or refuse to close and thereby breach their contracts with buyers or lose the sale of their home.

Count I is an action for money wrongfully had and received. Plaintiffs allege that by charging class members costs and fees that defendant had no right to recover but were barred from charging buyers, defendant wrongfully had and received money belonging to the class members in assumpsit. As a result of this wrongful conduct, the class members have been damaged.

Count II is a claim for damages due to economic duress. Plaintiffs allege that since defendant would not have funded the closing had plaintiffs refused or failed to pay the costs and fees, and that likely would have caused the destruction of plaintiffs' real estate contract with buyer, plaintiffs had no recourse other than to pay the illegal cost and fees. This pressure that defendant placed upon plaintiffs to

pay the illegal costs and fees constitutes economic duress and plaintiffs are entitled to recover the amount of the illegal payments.

Count III alleges a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Act) (Ill. Rev. Stat. 1987, ch. 121½, pars. 261 through 268). Plaintiffs claim that they were "consumers" under the Act and that defendant's failure to timely notify them of the improper costs and fees that it intended to charge them and defendant's attempt to circumvent the applicable FHA regulations by passing off the costs and fees to plaintiffs were deceptive, unfair, willful and material acts which violated section 2 of the Act. Therefore, under the Act, plaintiffs are entitled to recover actual damages plus costs and attorney fees.

■ Granting a motion to dismiss pursuant to section 2—615 of the Illinois Code of Civil Procedure is within the sound discretion of the trial court. (Ill. Rev. Stat. 1987, ch. 110, par. 2—615; *Harvey v. Mackay* (1982), 109 Ill. App. 3d 582, 440 N.E.2d 1022.) The inquiry on appeal from an order granting a motion to dismiss is limited to accepting as true all well-pleaded facts and reasonable inferences that can be drawn therefrom and to examining whether a cause of action was stated. (*Moreno v. Joe Perillo Pontiac, Inc.* (1983), 112 Ill. App. 3d 670, 445 N.E.2d 1184.) Even though pleadings are to be liberally construed, in considering a motion to dismiss, pleadings are to be construed strictly against the pleader. (*Harvey*, 109 Ill. App. 3d at 586, 440 N.E.2d at 1025.) The trial court is not required to reach unreasonable and unwarranted conclusions or to draw unreasonable and unwarranted inferences in order to sustain the sufficiency of the complaint. (*Carlson v. Moline Board of Education, School District No. 40* (1984), 124 Ill. App. 3d 967, 464 N.E.2d 1239.) Legal conclusions, speculation and conjecture must be ignored by the court. (*McCauley v. Chicago Board of Education* (1978), 66 Ill. App. 3d 676, 384 N.E.2d 100.) When the court draws reasonable inferences from the facts, it must view those facts against the background of common sense and experience. *Bescor, Inc. v. Chicago Title & Trust Co.* (1983), 113 Ill. App. 3d 65, 446 N.E.2d 1209.

■ In order to state a cause of action under Illinois law for money wrongfully had and received in assumpsit, a plaintiff must allege that (1) he was compelled to pay money to the defendant, (2) the defendant had no legal right to demand the money, and (3) payment was necessary in order to avoid an injury to his business, person or property. (*Peterson v. O'Neill* (1930), 255 Ill. App. 400, 402.) Black's Law Dictionary defines "assumpsit for money had and received" as being equitable in character and lies whenever defendant had received

money which in equity and good conscience he ought to pay to plaintiff. Black's Law Dictionary 112 (5th ed. 1979).

■ Plaintiff's claim for money wrongfully had and received in assumpsit fails to state a cause of action for several reasons. Based on the complaint, plaintiffs have not shown that they were compelled to pay the disputed monies to defendant in order to avoid an injury to their business, person or property. Plaintiffs gave the money freely to defendant so that the real estate transaction would close. Plaintiffs speculate that the sale would not have closed had they not paid the disputed fees. The complaint is devoid of any allegations that plaintiffs refused to pay the fees and that defendant retaliated by refusing to proceed with the closing. In fact, plaintiffs were not in privity with the defendant. If the plaintiffs refused to pay the fees, defendant would not have had a cause of action or claim against plaintiffs. On the other hand, if the plaintiffs refused to pay the fees and the closing collapsed because of the refusal, plaintiff would have a claim for specific performance or breach of contract action against the buyers.

Relying on *Pemberton v. Williams* (1877), 87 Ill. 15, plaintiffs maintain that their pleading states a cause of action. In *Pemberton*, the court held that an action for money had and received could be maintained where after a buyer had paid nearly all the contract price, had also contracted to sell the property to a third party, the original seller demanded as a condition of the delivery of the deed a sum larger than was set forth in the contract. (*Pemberton*, 87 Ill. at 17.) In the above case, the defendant conditioned his cooperation upon plaintiff meeting his demand. Furthermore, the plaintiff and the defendant had a contract which defendant breached. First Mortgage did not have a contract with the Butittas nor was there any threatened breach of contract alleged in the complaint. Additionally, there is no allegation that First Mortgage conditioned closing upon the Butittas paying the disputed fees.

In *Peterson*, the buyer discovered that a deed conveyed less land than he had purchased. The seller demanded additional money before he would issue a new deed correcting the legal description. The court held that the purchaser could recover the coerced payment from the seller in an action for money had and received under duress. (*Peterson*, 255 Ill. App. at 402.) Again, there was privity of contract between the seller and the buyer which is lacking in the case at bar. Moreover, there are no facts in the complaint that indicate that plaintiffs were compelled to pay the fees under any sort of threat from defendant; therefore, the payment of the disputed fees was voluntary.

For similar reasons, *Kaplan v. Keith* (1978), 60 Ill. App. 3d 804, 377 N.E.2d 279, is distinguishable.

Defendant appropriately cites *Messitte v. Colonial Mortgage Service Co. Associates, Inc.* (1980), 287 Md. 289, 411 A.2d 1051, for the proposition that a mortgage company can assess the disputed fees against a seller. In *Messitte*, the seller sued to recover various fees including the lender's inspection fee, notary fee and settlement fee which were assessed against him by the mortgage company because it could not assess the fees to the buyer due to Veterans Administration (VA) or FHA prohibitions. (*Messitte*, 287 Md. at 292, 411 A.2d at 1052.) The Maryland Appellate Court held that the VA or FHA prohibitions did not apply to assessing charges to the seller. (*Messitte*, 287 Md. at 295, 411 A.2d at 1054.) The United States Department of Justice filed an *amicus curiae* brief with the court in support of the mortgage company's position. (*Messitte*, 287 Md. at 294-95, 411 A.2d at 1053-54.) Plaintiffs attempt to distinguish *Messitte* by pointing out that they are not alleging a violation of a Federal regulation in the case at bar. Regardless, plaintiffs are alleging that defendant's assessments are illegal. There is nothing in the complaint which indicates that the charges are illegal and the plaintiff does, in fact, allege that defendant is limited by the FHA and VA prohibitions.

Similarly, the Illinois Appellate Court has found that nothing prohibits a buyer and seller from entering into a separate agreement covering the loan origination fees seller agreed to pay so that defendants could get a VA loan. (*Brown v. Tuttle* (1989), 189 Ill. App. 3d 123, 544 N.E.2d 1328.) We find that the complaint fails to state a cause of action for money wrongfully had and received in assumpsit.

■ Relying on *Herget National Bank v. Theede* (1989), 181 Ill. App. 3d 1053, 537 N.E.2d 1109, plaintiffs contend that they have alleged sufficient facts to state a cause of action for economic duress. Economic duress is present where "one is induced by a wrongful act of another to make a contract under circumstances which deprive him of the exercise of free will." (*Alexander v. Standard Oil Co.* (1981), 97 Ill. App. 3d 809, 814, 423 N.E.2d 578, 582, citing *Kaplan v. Kaplan* (1962), 25 Ill. 2d 181, 186, 182 N.E.2d 706, 709.) To establish duress, plaintiffs must demonstrate that the threat left them "bereft of the quality of mind essential to the making of a contract." (*Alexander*, 97 Ill. App. 3d at 815, 423 N.E.2d at 582.) Plaintiffs must show that they were induced to enter into a contract by some wrongful act of the other contracting party. (*Herget*, 181 Ill. App. 3d at 1057, 537 N.E.2d at 1112.) Duress cannot be shown by the fact that one was subjected to mere annoyances, vexation, personal embarrassment

(*Kaplan*, 25 Ill. 2d at 186-87, 182 N.E.2d at 710), a difficult bargaining position or the pressure of financial circumstances (*Kewanee Production Credit Association v. G. Larson & Sons Farms, Inc.* (1986), 146 Ill. App. 3d 301, 305, 496 N.E.2d 531, 534). There must have been some "imposition, oppression, undue influence, or the taking of undue advantage of the business or financial stress or extreme necessities or weaknesses of another." *People ex rel. Buell v. Bell* (1959), 20 Ill. App. 2d 82, 95, 155 N.E.2d 104, 111.

In *Herget*, the bank misrepresented to plaintiff that he was liable for his wife's debts. (*Herget*, 181 Ill. App. 3d at 1055, 537 N.E.2d at 110.) Additionally, the bank stated that it would honor plaintiff's check only if he would sign a promissory note for $60,800 which would consolidate all of the loans made to his wife. (*Herget*, 181 Ill. App. at 1055, 537 N.E.2d at 110.) First Mortgage never misrepresented anything to plaintiffs, nor did it coerce plaintiffs into entering a contract with it. Therefore, *Herget* is distinguishable from the case at bar.

The plaintiffs also cite *Schlossberg v. E.L. Trendel & Associates, Inc.* (1978), 63 Ill. App. 3d 939, 380 N.E.2d 950, in which the buyer of certain real estate had in turn agreed to resell the property to a third party. After tender of the purchase price, the seller demanded an additional $30,000. (*Schlossberg*, 63 Ill. App. 3d at 940, 380 N.E.2d at 951.) Since the buyer was already obligated to resell the property to a third party and would be in default if he could not obtain the deed, the buyer had no choice but to pay the additional funds and then sue for recovery of them. The court stated that "[w]here a person, to prevent injury to himself, his business or property, is compelled to make payment of money which the party demanding has no right to receive and no adequate opportunity is afforded the payor to effectively resist such demand, the payment is made under duress and can be recovered." (*Schlossberg*, 63 Ill. App. 3d at 942-43, 380 N.E.2d at 953.) Again, there was no contract between First Mortgage and plaintiffs as in *Schlossberg*. First Mortgage did not persistently demand that the Butittas pay the disputed charges. See *Schlossberg*, 63 Ill. App. 3d at 940, 380 N.E.2d at 951.

■ Plaintiffs' allegations that they were not afforded an opportunity to resist the charges is conjecture unsupported by any factual allegations. There are not even any allegations that the Butittas questioned these charges at the time of closing. Count II of the complaint fails to demonstrate duress and, thus, fails to state a cause of action for economic duress.

In count III of the complaint, plaintiffs claim that First Mortgage committed "deceptive acts" under the Act by failing to timely notify plaintiffs of the improper costs and fees that it intended to charge them and by improperly passing those costs and fees to plaintiff. Count III fails to state a cause of action because the complaint is devoid of any factual allegations which indicate that the fees were, in fact, improper or illegal.

Plaintiffs cite *Heastie v. Community Bank of Greater Peoria* (N.D. Ill. 1988), 690 F. Supp. 716, to bolster their position. In *Heastie*, First American Mortgage Company (FAMCO) agreed to refinance a relatively unsophisticated elderly woman's mortgage loan. At the closing of the loan, Heastie was presented with loan papers indicating the lender was Alliance Funding Company (Alliance), not FAMCO and that finance charges totalling nine percent of the loan were being assessed. FAMCO received $760 and Alliance received $147 from these charges. Faced with the threat of foreclosure on her home from her previous lender, Heastie reluctantly signed the loan documents. (*Heastie*, 690 F. Supp. at 717.) The court held that FAMCO misrepresented itself in its initial contact with Heastie at a time when its status as broker or lender might have had a bearing on her conduct. Then at closing, as pressure to avoid foreclosure on her home mounted, the truth was revealed in the loan documents. At the time of closing, Heastie's need for money was paramount. *Heastie*, 690 F. Supp. at 719.

The above case is distinguishable from the one at bar. *Heastie* involved a blatant misrepresentation of a material fact to an unsophisticated elderly person. Plaintiffs have not alleged that First Mortgage ever made a misrepresentation. Rather, plaintiffs allege that they were not aware of the disputed charges until shortly before closing. A material misrepresentation relates to a "matter upon which the plaintiff could be expected to rely in determining to engage in the conduct in question." (*Mother Earth, Ltd. v. Strawberry Camel, Ltd.* (1979), 72 Ill. App. 3d 37, 49, 390 N.E.2d 393, 404.) Plaintiffs do not allege that had they known about the charges, they would have pursued buyers who did not require FHA or VA loans. The allegation of how one would have acted differently may be raised to support an inference of materiality. (*Heastie*, 690 F. Supp. at 720.) However, the absence of such an allegation may suggest a lack of materiality. (*Heastie*, 690 F. Supp. at 720.) Not only do plaintiffs fail to allege that they would have acted differently had they been aware of the disputed charges prior to closing, but they fail to allege any misrepresentation on the part of First Mortgage or any facts which would indicate that the dis-

20

puted fees were improper or illegal. We find that count III fails to state a cause of action for a violation of the Act.

For the reasons stated above, we affirm the circuit court of Cook County's dismissal of the complaint.

Affirmed.

MANNING, P.J., and CAMPBELL, J., concur.