2023 IL App (1st) 221273-U

FIFTH DIVISION
May 19, 2023

No. 1-22-1273

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| JET ACQUISITIONS, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 21 M1 104863 |
| | ) | |
| TIFFANY BROOKS, | ) | Honorable |
| | ) | Yvonne Coleman, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE LYLE delivered the judgment of the court.
Presiding Justice Delort and Justice Mitchell concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court's judgment granting the plaintiff's motion for summary judgment is affirmed.

¶ 2    On March 2, 2021, the plaintiff-appellee, Jet Acquisitions, LLC (Jet Acquisitions) filed a complaint in assumpsit in the circuit court of Cook County against the defendant-appellant, Tiffany Brooks. On March 10, 2022, Jet Acquisitions filed its motion for summary judgment. On August 11, 2022, the trial court granted Jet Acquisitions' motion for summary judgment. On appeal, Ms. Brooks argues that the trial court erred by: (1) granting summary judgment in favor of Jet

Acquisitions when material issues of fact remained regarding the elements of assumpsit; and (2) quashing Ms. Brooks' subpoena to Chicago Title Insurance Company. For the reasons that follow, we affirm the judgment of the circuit court of Cook County.

¶ 3                                    BACKGROUND

¶ 4      Ms. Brooks is an attorney who sued her previous client for unpaid attorney fees pursuant to a representation contract. In that action, she obtained a judgment in her favor for $19,960.25. She then perfected a lien in that amount against the property of that client. That property is located at 6238 South Saint Lawrence Avenue in Chicago, Illinois. Subsequently, the property went into foreclosure, and in 2019, was sold to Jet Acquisitions. The property remained subject to Ms. Brooks' lien at the time of the sale. Jet Acquisitions is a business which routinely purchases property with the intent to repair and resell the acquired property. On June 25, 2020, Jet Acquisitions entered into a contract to sell the property for $360,000. On August 4, 2020, an attorney for Ms. Brooks informed Jet Acquisitions that Ms. Brooks' lien remained an encumbrance on the title of the property as it had not been paid.

¶ 5      On August 7, 2020, Jet Acquisitions cancelled the contract. On August 16, 2020, Jet Acquisitions entered into a new contract with the same prospective buyer for the amount of $380,000. In that contract, it stated that the seller, Jet Acquisitions, shall present evidence of marketable title to the buyer five days prior to the closing date. The contract went on to state that if there were any encumbrances on the title, the seller had 30 days to cure it after knowledge of its existence. On October 21, 2020, Ms. Brooks provided her payoff letter to Jet Acquisitions stating $33,053.87 was due. Ms. Brooks provided a breakdown of the amount as: judgment of $19,960.25, $5,920.50 as judgment interest; $6000.00 in attorney fees; $160.00 in third party citation costs;

$450.00 in appraisal fees; and a $50.00 recording fee for the filing of the memorandum of judgment. The post-judgment costs had not been reduced to a judgment. Jet Acquisitions' attorney responded, via email, objecting to the amounts claimed and refusing to pay same. Jet Acquisitions asserted, in an affidavit of one of its employees, that it paid the demand and completed the sale of the property, which Ms. Brooks does not dispute.

¶ 6    On March 2, 2021, Jet Acquisitions filed a complaint in assumpsit for money had and received based on Ms. Brooks' demand and its subsequent payment. Jet Acquisitions sought $6,960.00, the amount in excess of the judgment and statutory interest that they paid. On April 7, 2021, Jet Acquisitions filed a motion for summary judgment, arguing that the trial court should grant its motion because there were no genuine issues of material fact as the law was clear that Ms. Brooks was only entitled to the lien amount plus accrued statutory interest. In her response to the motion for summary judgment, Ms. Brooks asserted that whether the payment made by Jet Acquisitions was forced or voluntary remained a genuine issue of material fact. She also argued that whether she was legally entitled to the money demanded was also a contested issue of fact. Since those issues had not been proven, she asserted that Jet Acquisitions had not met its burden of showing that no genuine issue of material fact remained and summary judgment was not proper.

¶ 7    After the parties' oral arguments, the trial court requested that they submit final written arguments. The court then took the matter under advisement. On August 11, 2022, the court issued a written ruling granting summary judgment in favor of Jet Acquisitions and finding Jet Acquisitions was only obligated to pay the amount for the lien and accrued statutory interest. The court further found that Ms. Brooks owed Jet Acquisitions the difference between the amount paid

and the amount of the lien plus accrued statutory interest. On August 22, 2022, Ms. Brooks filed her notice of appeal.

¶ 8                                              ANALYSIS

¶ 9      We note that we have jurisdiction to consider this matter, as Ms. Brooks filed a timely notice of appeal following the trial court's judgment. See Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. July 1, 2017).

¶ 10     On appeal, Ms. Brooks argues the trial court erred by granting summary judgment in favor of Jet Acquisitions because genuine issues of material fact remained. Additionally, Ms. Brooks also appealed the trial court's order quashing a subpoena she issued to the Chicago Title Insurance Company.

¶ 11     Summary judgment should be granted only where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2018); *Nine Group II, LLC v. Liberty International Underwriters, Inc.*, 2020 IL App (1st) 190320, ¶ 34. "A genuine issue of material fact exists where the facts are disputed or where reasonable minds could draw different inferences from the undisputed facts." *Nine Group II,* LLC, 2020 IL App (1st) 190320, ¶ 34. In appeals from summary judgment rulings, our review is *de novo*, which means we perform the same analysis that a trial court would perform. *Nine Group II,* LLC, 2020 IL App (1st) 190320, ¶ 34.

¶ 12     Section 2-1303 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1303 (West 2020)) states:

      "Judgments recovered in any court shall draw interest at the rate of 9% per annum

from the date of the judgment until satisfied or 6% per annum when the judgment debtor is a unit of local government, as defined in Section I of Article VII of the Constitution, a school district, a community college district, or any other governmental entity. When judgment is entered upon any award, report or verdict, interest shall be computed at the above rate, from the time when made or rendered to the time of entering judgment upon the same, and included in the judgment. Interest shall be computed and charged only on the unsatisfied portion of the judgment as it exists from time to time. The judgment debtor may by tender of payment of judgment, costs and interest accrued to the date of tender, stop the further accrual of interest on such judgment notwithstanding the prosecution of an appeal, or other steps to reverse, vacate or modify the judgment."

To state a cause of action for "money had and received *in assumpsit,* a plaintiff must allege that (1) he was compelled to pay money to the defendant, (2) the defendant had no legal right to demand the money, and (3) payment was necessary in order to avoid an injury to his business, person or property." *Butitta v. First Mortgage Corporation*, 218 Ill. App. 3d 12, 15 (1991).

¶ 13    Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020) "governs the form and content of appellate briefs." *McCann v. Dart*, 2015 IL App (1st) 141291, ¶ 12. The rule provides that an appellant's brief must contain a statement of "the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment," and an argument "which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(6), (7) (eff. Oct. 1, 2020). Pursuant to the rule, a reviewing court is entitled to have issues clearly defined with "cohesive arguments" presented

and pertinent authority cited. *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993). "Arguments that do not comply with Rule 341(h)(7) do not merit consideration on appeal and may be rejected by this court for that reason alone." *Wells Fargo Bank, N.A. v. Sanders*, 2015 IL App (1st) 141272, ¶ 43.

¶ 14    While Ms. Brooks cites *First Mortgage Corporation*, 218 Ill. App. 3d at 15, for the elements of an assumpsit claim, she does not use any caselaw to support her allegation that a title indemnity loan would have made payment unnecessary. She also does not reference any authority to support her claim that Jet Acquisitions was not forced to pay the money or that she had a legal right to the money paid. As such, we need not consider the arguments raised by Ms. Brooks, and they are forfeited. *Sanders*, 2015 IL App (1st) 141272, ¶ 43; See also Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited.").

¶ 15    However, if we were to consider Ms. Brooks' appeal as to the assumpsit claim on the merits, it still fails. First, under Ms. Brooks' theory, we must determine the existence of genuine issues of material fact which would have prevented the entry of summary judgment. Ms. Brooks tendered a payoff letter to Jet Acquisitions advising it that she would release her lien for $33,053.87. She acknowledges that Jet Acquisitions paid her $33,053.87, the amount contained in the payoff letter. However, she argues that there was a genuine issue of material fact as to whether she was entitled to that dollar amount and, since that was a matter best resolved by the trier of fact, Jet Acquisitions had not proven the elements of an assumpsit claim. Therefore, summary judgment was not proper.

¶ 16    As to the allegations that Jet Acquisitions was required to prove, first, Jet Acquisitions needed to show it was compelled to pay money to Ms. Brooks. Having established that the payment

of the contested funds was made, the question posed by Ms. Brooks is whether the payment was compulsory or "freely made." In the contract that Jet Acquisitions entered into with a prospective buyer, the terms stated that the title needed to be clear of all encumbrances by 30 days after the discovery of any. Further, the affidavit and exhibits in support of the motion for summary judgment indicated that Jet Acquisitions objected to the payment amount, not the payment demanded. Pursuant to Section 2-1303 of the Code (735 ILCS 5/2-1303 (West 2020)), Ms. Brooks' ownership of a properly perfected lien required Jet Acquisitions to pay the amount of that lien and any statutory interest that accrued.

¶ 17    Next, we look to whether Ms. Brooks had a legal right to demand the money.

¶ 18    Section 2-1303 of the Code specifies that the debtor is not just responsible for the judgment and the accrued interest but also for costs associated with obtaining the payment of the judgment. *Poliszczuk v. Winkler*, 2011 IL App (1st) 101847, ¶ 26. However, we cannot determine those costs because she does not raise it in any of her pleadings. Moreover, for Ms. Brooks to collect the attorney fees and other fees requested in her demand letter, she would have needed to perfect them in a lien. See *Tobias v. Lake Forest Partners, LLC*, 402 Ill. App. 3d 484, 489 (2010) (stating the plaintiff was not entitled to attorney fees incurred in the collection of the judgment since the plaintiff never reduced the claim to an enforceable judgment or lien). Failing to perfect her lien for the additional amount, the trial court properly determined the amount she was entitled to collect as $19,960.25 plus the statutory interest of $5,920.50.

¶ 19    Turning to whether Jet Acquisitions was compelled to pay to prevent injury to the business, Ms. Brooks alleges that Jet Acquisitions did not need to render payment to avoid injury. Jet Acquisitions argued that it would incur unnecessary holding costs, payments on taxes and

insurance, and lose the value of the money it invested into the property in contemplation of sale. Jet Acquisitions was under contract for the purchase of the property. In the contract, Jet Acquisitions promised to give the buyer marketable title at least 5 days before closing and to resolve any issue with the title 30 days after becoming aware of it. They could not produce clear, marketable title, a title without encumbrances, without paying the amount demanded in the payoff letter. See *Ableman v. Slader*, 80 Ill. App. 2d 94, 99 (1967) (stating "a party cannot be required to purchase a lawsuit"). Jet Acquisitions is a business that buys and sells property. Forcing Jet Acquisitions to carry the property for an indeterminate time would injure the business, and the evidence supports that conclusion.

¶ 20    Ms. Brooks argued that Jet Acquisitions could have entered into a title indemnity agreement[1] to allow the parties to close in spite of the lien and points to the fact that Jet Acquisitions already had entered into an indemnity agreement for "sold taxes." She raised the issue that it would not cost Jet Acquisitions more money to enter into another title indemnity agreement for the first time on appeal. Since she raises it for the first time on appeal, that argument would be forfeited as well. *Mabry v. Boler*, 2012 IL App (1st) 111464, ¶ 15 (arguments not raised before the circuit court are forfeited and cannot be raised for the first time on appeal). As such, we find that Jet Acquisitions showed that they had to pay the demand or suffer injury to their business, and thus, the trial court did not err in finding summary judgment for Jet Acquisitions.

¶ 21    She also argues that the court erred by quashing her subpoena to Chicago Title & Trust Insurance Company for the purpose of securing testimony regarding its policies pertaining to title

---

[1]If there is a lien or other unpaid item, which impairs the title of a property, a title company can enter into a title indemnity agreement wherein they hold funds to cover the unpaid amount.

indemnity escrows. Ms. Brooks does not cite any authority to support her argument that the trial court erred, and accordingly, her claim is forfeited. *Sanders*, 2015 IL App (1st) 141272, ¶ 43 (stating contentions argued before the appellate court without authority violate Illinois Supreme Court Rule 341(h)(7)). Ms. Brooks also makes an argument that Jet Acquisitions had unclean hands, without citation, which is also forfeited. *Sanders*, 2015 IL App (1st) 141272, ¶ 43.

¶ 22    We, therefore, affirm the trial court's judgment granting summary judgment and quashing the subpoena to Chicago Title & Trust Insurance Company.

¶ 23                          CONCLUSION

¶ 24    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 25    Affirmed.